14323

STATE *EX REL*. COLEMAN v. LEWIS *ET AL*.

(186 S. E., 625)

12

14

June, 1936.

*Messrs. Nathans & Sinkler* and *Robinson & Robinson,* for petitioners,

*Messrs. John M. Daniel, Attorney General, J. Ivey Humphrey* and *M. J. Hough, Assistant Attorneys General,* for respondents,

June 30, 1936.

The opinion of the Court was delivered by Mr. Justice Fishburne.

The plaintiff, a citizen and taxpayer of the County of Richland, State of South Carolina, by permission, instituted this proceeding in the original jurisdiction of the Court, for the purpose of having declared unconstitutional Act No. 831 (39 St. at Large, p. 1557), enacted by the General Assembly at its 1936 session, and which became effective on the 14th day of May, 1936, when it was passed over the objection of the Governor.

It will be hereinafter referred to as the Act.

The case now comes before this Court upon the order of the Chief Justice dated June 3, 1936, based upon the verified petition, requiring the respondents to show cause why the prayer of the petition should not be granted, and why the respondents, and especially the State Treasurer, E. P. Miller, should not be permanently enjoined from issuing the certificates of indebtedness referred to in the petition. The respondents have answered and made a return to the rule to show cause in which they put at issue all of the allegations of unconstitutionality.

The purposes and objects to be achieved by the Act are set out in the title, as follows: "To Create a New State Highway Commission; to Prescribe a Statewide Program of Highway Construction by Said Commission and to Provide for the Financing Thereof; to Provide for the Election of District Highway Commissioners; to Constitute District Highway Commissioners as the State Highway Commis-

sion; to Fix the Term of Office of District Highway Commissioners: to Direct the State Highway Commission to Reduce Annually the Principal of its Outstanding Obligations; to Limit the Aggregate Amount of Certificates of Indebtedness and Reimbursement Obligations that may be Issued in Any One Year; to Direct How and By Whom State Highway Certificates of Indebtedness may be Issued and Sold Hereafter, and to Provide Funds for the Construction of the State Highway System and for Refinancing Purposes; to Reduce the Annual License Fees on Certain Motor Vehicles; to Require the Payment Thereof, and to Provide Penalties for Violations."

The petitioner in this case launches a direct attack upon the validity of the Act, and challenges its constitutionality upon many grounds.

In determining the constitutionality of statutes, it is a well-settled rule in South Carolina that:

"A statute will, if possible, be construed so as to render it valid; that a legislative act will not be declared unconstitutional unless its repugnance to the Constitution is clear and beyond reasonable doubt; that every presumption will be made in favor of the constitutionality of a legislative enactment; that it will be declared unconstitutional only when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution; that all reasonable presumptions must be made in favor of the validity of the Act; and that the Constitution of South Carolina is a limitation upon, rather than a grant of, legislative power.

"See *State v. Moorer,* 152 S. C., 455, 150 S. E., 269; *Wingfield v. Tax Commission,* 147 S. C., 116, 144 S. E., 846; *Battle v. Willcox,* 628 S. C., 500, 122 S. E., 516; *Xepapas v. Richardson,* 149 S. C., 52, 146 S. E., 686; *Scroggie v. Scarborough,* 162 S. C., 218, 160 S. E., 596; *Santee Mills v. Query,* 122 S. C., 158; 115 S. E., 202; *Duke Power Company v. Bell,* 156 S. C., 299; 152 S. E., 865;

*Fripp v. Coburn,* 101 S. C., 312; 85 S. E., 774; *Cathcart v. Columbia,* 170 S. C., 362, 170 S. E., 435; *Park v. Greenwood County,* 174 S. C., 35, 176 S. E., 870." *Clarke v. South Carolina Public Service Authority,* 177 S. C., 427, 181 S. E., 481, 484.

It is contended that the Act violates Article 3, Section 15, of the Constitution, in that it is a revenue bill which should have originated in the House.

The record shows that the Bill did originate in the House, as House Bill No. 1420, and was introduced on the 24th day of January, 1936, as will appear from the Journal of the House of that date. It is true that the Senate amended the Bill, as it had a constitutional right to do, but the only income-producing feature of the Act is the license tag feature, which was in the Bill from its inception in the House. For this reason it is apparent that there is no merit in this contention. But aside from this, the provision (Section 3 of the Act), requiring the payment of an annual motor vehicle license fee is not within the purview of this section of the Constitution, in that it is not a Bill to raise revenue in the constitutional sense. *State v. Stanley,* 131 S. C., 511, 127 S. E., 574.

It is next contended that the Act violates Article 3, Section 17, of the Constitution, in that it relates to more than one subject, not expressed in the title, in violation of said section. This question has been before the Court on numerous occasions. It is concluded adversely to the position of the petitioner by the case of *State v. Moorer, supra,* and the supporting authorities therein cited and quoted from. In the *Moorer case,* the Court, speaking through Mr. Chief Justice Stabler, had this to say:

"In *Verner v. Muller,* 89 S. C., 117, 71 S. E., 654, 655, with regard to this provision, the Court said:

" 'The mandate of the Constitution is complied with if the title states the general subject of legislation and the provisions in the body of the act are germane thereto as means

18

to accomplish the object expressed in the title. *Connor v. Green Pond, W. & B. Railroad Co.,* 23 S. C., 427; *State v. O'Day,* 74 S. C., 448, 54 S. E., 607.' * * *

" 'It is not necessary that the title should be an index of the contents of the statute.' *Briggs v. Greenville County,* 137 S. C., 288, 135 S. E., 153, 163. See, also, *Means v. Highway Department,* 146 S. C., 19, 143 S. E., 360; *McKiever v. City of Sumter,* 137 S. C., 266, 135 S. E., 60."

The argument for the petitioner is that the Act relates to many subjects, in that it provides: (a) The creation of a new State Highway Commission; (b) for the election of commissioners; (c) a direction to the Commission to reduce its outstanding obligations; (d) directs the issuance of certificates of indebtedness; and (e) to reduce the annual license fee on motor vehicles.

An examination of the terms of the Act shows that it encompasses only one cognate subject, and that is, the creation of a State Highway Commission, and the definition of the powers, duties, and functions of that Commission. Every. portion of the Act relates unerringly to the State Highway Commission, and the entire Act is very analogous to others which have been passed upon by this Court and held not to be repugnant to Article 3, Section 17, of the Constitution. Its provisions are clearly germane to the title.

For analogous cases, see *Clarke v. South Carolina Public Service Authority, supra; Lillard v. Melton,* 103 S. C., 10, 87 S. E., 421; *Poulnot v. Cantwell,* 129 S. C., 171, 123 S. E., 651; *Spartanburg County v. Miller,* 135 S. C., 348, 132 S. E., 673; *Connor v. Green Pond W. & B. R. Co.,* 23 S. C., 427.

It is also contended that the Act violates Article 3, Section 18, of the Constitution, which requires that each Act and Joint Resolution shall be read three times in each House. This Court has held in numerous cases that when an Act has been enrolled, signed by the President of the Senate and the Speaker of the House, its terms can be ascertained only by an inspection of the enrolled Act, and

evidence from the Journal of the House and of the Senate is not competent for this purpose. The Court conclusively presumes that the Act has been properly passed.

This question received a full consideration and elaborate discussion in *State ex rel. Richards v. Moorer, supra,* from which we quote as follows:

" 'In the case of *State ex rel. Hoover v. Chester,* 39 S. C., 307, 17 S. E., 752, decided in 1893, the question was again considered. In a unanimous opinion the Court over-ruled the Platt [*State v. Platt* 2 S. C., 150, 16 Am. Rep., 647], and Hagood [*State v. Hagood,* 13 S. C., 46] cases, and adopted the enrolled Bill rule in the following unmistakable language:

" 'We announce that the true rule is, that when an act has been duly signed by the presiding officers of the General Assembly, in open session in the Senate-House, approved by the Governor of the state, and duly deposited in the office of the secretary of state, it is sufficient evidence, nothing to the contrary appearing upon its face, that it passed the General Assembly, and that it is not competent either by the journals of the two houses, or either of them, or by any other evidence, to impeach such an act. And this being so, it follows that the court is not at liberty to inquire into what the journals of the two houses may show as to the successive steps which may have been taken in the passage of the original bill.'

"The court gives the following reasons for the adoption of the enrolled bill rule: 'Public policy, certainty as to what the law is, convenience, and that respect due by the courts to the wisdom and integrity of the Legislature, a co-ordinate branch of the government, all require that the enrolled bill, when fair upon its face, should be accepted without question by the courts. 26 Am. & Eng. Ency. of Law, p. 557; *State of Washington ex rel., Thomas M. Reed, Jr., v. W. C. Jones, Attorney General,* 6 Wash., 452, 34 P., 201, 23 L. R. A., 340; *Atchison Railway Co. v. State of Oklahoma,*

28 Okl., 94, 113 P., 921, 40 L. R. A. (N. S.), 1; *Field v. Clark,* 143 U. S., 649, 12 S. Ct., 495, 36 L. E., 294, and the cases cited therein.' "

During the oral argument of this case, the original enrolled Act now under attack was exhibited to the Court, and carefully scrutinized. We are fully satisfied from that examination that the Act meets all the requirements of the enrolled bill rule as announced in *Wingfield v. South Carolina Tax Commission, supra,* and it is not competent to attempt to impeach it by evidence outside of the Act itself.

The enrolled bill appears entirely regular upon its face. It was duly signed by the President of the Senate and by the Speaker of the House of Representatives, was duly and regularly passed by the constitutional majority required upon its reconsideration when returned to the House and the Senate by the Governor with his objections, and filed in the office of the Secretary of State with the great seal of the State affixed. Having been properly authenticated as required by the Constitution, it becomes the "sole expository of its own contents and the conclusive evidence of its existence and valid enactment," and this Court cannot look to the Journals of either House or to other extraneous evidence in order to ascertain its history or its provisions, or to inquire into the manner of its enactment.

The Court in *State ex rel. Hoover v. Chester, supra,* in announcing the rule to be followed, added: "It will be observed that this conclusion by no means negatives the power of the Court to inquire into those prerequisites fixed by the Constitution, and of which prerequisites the journals of the two houses are required to furnish the evidence; such, for instance, as the organization of the two houses, the presence of a quorum, the votes of two-thirds of the members by ayes and noes to be entered on the journals in certain cases."

As was said in *Wingfield v. South Carolina Tax Commission, supra:* "The Constitution does not specifically re-

quire that the journals shall show the contents of a bill or its title, nor the number of times and days that it has been read in either or both houses, nor the house in which it originates. Therefore these are not prerequisites fixed by the Constitution to be entered upon the journals, to be resorted to as evidence in determining the validity of an act as to its origin and passage."

It is further contended that the Act is unconstitutional and violates the provisions of Article 4, Section 23, of the Constitution, in that this section does not permit a reconsideration of a vote sustaining the Governor's veto.

The petitioner submits that the House Journal of May 13, 1936, shows that the House by a vote of 77 yeas and 43 nays refused to override the veto of the Governor, and despite the points of order made on the floor of the House, the House proceeded to reconsider the vote on the following day, May 14th, and by a vote of 82 yeas and 39 nays overrode the veto of the Governor.

Article 4, Section 23, of the Constitution provides, in substance, that the Governor shall return the Bill, with his objections, to the House in which it originated, which shall enter the objection at large on its Journal and proceed to reconsider it. If after such reconsideration two-thirds of that House shall agree to pass it, it shall be sent together with the objections to the other House, and if approved by two-thirds of that House it shall have the same effect as if it had been signed by the Governor.

This contention of the petitioner may not be sustained for several reasons: In the first place the constitutional provision relied upon (Article 4, § 23) must be considered in conjunction with the provisions of Article 3, Section 12, which provides, in part, that "each house shall choose its own officers, determine its rules of procedure," etc.

Rule 44 of the House, appearing in the 1936 Legislative Manual, dealing with the procedure to be followed with re-

spect to motions to reconsider, is as follows: "When a question shall have been once decided in the affirmative or negative, any member who voted with the prevailing side may, on the same day or the next day of the sitting of the House move for a reconsideration thereof; and if the House shall refuse to reconsider, or, upon reconsideration, shall affirm its first decision, no further motion shall be in order except by unanimous consent. * * * "

Section 23 of Article 4 does not expressly or by implication deny to the House the right to reconsider a veto vote, and the question of whether it may be reconsidered is therefore governed by Rule 44 of the House, authorized by Article 3, Section 12, of the Constitution.

The Constitution empowers each House to determine its rules and proceedings. Neither House may by its rules ignore constitutional restraints or violate fundamental rights, and there should be a reasonable relation between the mode or method of procedure established by the rule and the result which is sought to be obtained, but within these limitations all matters of method are open to the determination of the House, and it is no impeachment of the rule to say that some other way would be better, more accurate, and even more just.

The power to make rules is not one when once exercised is exhausted. It is a continuous power, always subject to be exercised by the House, and, within the limitations suggested, absolute and beyond the challenge of any other body or tribunal. *United States v. Ballin,* 144 U. S., 1, 5, 12 S. Ct., 507, 36 L. Ed., 321.

In the recent case of *United States v. Smith,* 286 U. S., 6, 52 S. Ct., 475, 76 L. E., 954, the United States Supreme Court had under consideration a constitutional provision (Article 1, § 5, cl., 2) identical with that which we are now considering, which provides that "each House may determine the Rules of its proceedings," and incorporated in its opinion the following quotation from *United States v. Ballin, supra:*

"Neither do the advantages or disadvantages, the wisdom or folly, of * * * a rule present any matters for judicial consideration. With the courts the question is only one of power."

Our own cases are in accord with the Federal decisions referred to.

In the case of *Smith, Receiver, v. Jennings, Treasurer,* 67 S. C., 324, 45 S. E., 821, 822, Id., 206 U. S., 276, 27 S. Ct., 610, 51 L. Ed., 1061, the identical question now under consideration was passed upon and decided adversely to the contention now made by the petitioner. It appears from an examination of the case that the Governor returned a Joint Resolution unapproved and unsigned, and with his objections, to the Senate, where it originated. "On the 19th day of February, 1903, the Senate, by a vote of 25 to 11, out of a membership of 41, passed the joint resolution, the veto of his excellency the Governor to the contrary notwithstanding, but immediately thereupon reconsidered its said action, and on February 20, 1903, passed the joint resolution over the Governor's veto by a vote of 28 to 13. Thereupon the joint resolution, together with the Governor's objection—the veto—was sent to the House of Representatives, which body on the same day, * * * passed the joint resolution over the Governor's veto."

The Court held: "Treating a vote upon the passage of the joint resolution over the Governor's veto as upon the reconsideration of the original resolution, it is not a judicial question whether the Senate had the right to reconsider the vote upon such reconsideration. That is merely a matter of parliamentary procedure, which each body, by special rule, may, and usually does, regulate for itself. As a judicial question, we accept the result as shown by the Senate journal of February 20, 1903, and set forth in the petition, as one reached in accordance with the rules of the body"—and concluded by holding that the action of the Senate was unquestionable under the Constitution.

This case proceeded to the Supreme Court of the United States by writ of error (*Henry A. M. Smith, as Receiver, v. R. H. Jennings, as Treasurer,* 206 U. S., 276, 27 S. Ct., 610, 611, 51 L. Ed., 1061), where the Court held: "The conformity with the state Constitution of the proceedings in the enactment of the law is a question for the determination of the State court, and its judgment is final."

Applying the principle announced in these authorities, ■ it inevitably follows that this contention of the petitioner must be overruled.

Does the provision of the Act that the sufficiency of the revenues be determined solely by the State Highway Commission before bonds are issued violate any provision of the Constitution, and does the provision of the Act requiring State Highway certificates of indebtedness to be signed by the State Treasurer violate any provision of the State Constitution?

As stated in *Heslep v. State Highway Department,* 171 S. C., 186, 171 S. E., 913, 915, "It has always been, and is now, the law that the General Assembly may enact any act it desires to pass, if such legislation is not expressly prohibited by the Constitution of this state, or the Constitution of the United States. We find nothing in either of the Constitutions which prohibited the enactment of he law attacked in this case."

The general statement of the rule is that the powers ■ of the General Assembly are plenary as to all matters of legislation unless prohibited by some provision of the Constitution. *Clarke v. South Carolina Public Service Authority, supra; Waterloo School District v. Cross Hill School District,* 106 S. C., 292, 91 S. E., 257; *State v. Gossett,* 117 S. C., 76, 108 S. E., 290, 16 A. L. R., 1299; *Walpole v. Wall,* 153 S. C., 106, 149 S. E., 760.

The fact that the Constitution, Art. 4, § 1, has designated the Governor as the chief executive officer of the State does not require that the Legislature con-

fer upon him the power and duty to sign bonds which are authorized by the Legislature.

Nor does the fact that under the 1929 State Bond ▮▮Act, Chapter 127 of Volume 3 of the Code of 1932 (Section 5947 *et seq.*), the Governor is named along with the treasurer to sign the bonds, prevent the General Assembly from changing that method of issuing certificates of indebtedness. The Constitution contains no prohibition against following the procedure in this respect outlined in the Act.

Nor is there any delegation of legislative authority ▮ repugnant to Article 3, § 1, in conferring upon the State Highway Commission the determination of the sufficiency of the revenues. This question has been so fully discussed and determined adversely to the contention of the petitioner in the case of *State ex rel. Richards v. Moorer, supra,* in an opinion by the present Chief Justice of this Court, that it is necessary only to refer to that case, without quoting from it.

The next question presented for our consideration is: Does the Act violate the provisions of Article 3, § 34, in being considered as a Special Act, in contravention of the general State Highway Bond Act, Chapter 127 of Volume 3, Code of 1932?

The argument is urged by the petitioner that the Act constitutes special legislation, the effect of which is to make a special law for the benefit of certain localities, in contravention of the constitutional provision which requires that no special law shall be enacted where a general law can be made applicable.

The Legislature has provided that the provisions of this Act shall be merely cumulative to the provisions of law already in existence relative to the issuance of highway certificates of indebtedness.

Under numerous decisions of this Court, no one can ▮▮seriously challenge the right of the Legislature to designate certain roads for construction if the Legis-

lature sees fit to do so. In no sense can the Act be considered as running counter to the constitutional provision referred to. There is no merit in the argument urged by the petitioner that this is a Special Act, in that it permits certain roads named in the Act to be constructed from funds received from the sale of certificates of indebtedness which do not require the signature of the Governor nor require the determination of the sufficiency of the revenue by the Governor, whereas other roads in the State cannot be constructed from the proceeds of the issuance of certificates of indebtedness under the provisions of this Act, but can be constructed only with other funds of the department, most of which would have to be derived from the sale of certificates of indebtedness issued under the provisions of Chapter 127, Volume 3, of the Code of 1932.

As already stated, this contention must be overruled.

It is next urged that the certificates of indebtedness to be issued under the provisions of this Act will constitute obligations of the State of South Carolina, in violation of the provisions of the Constitution (Article 10, §§ 6, 7 and 11). Section 11 of this article provides as follows: "To the end that the public debt of South Carolina may not hereafter be increased without the due con sideration and free consent of the people of the State, the General Assembly is hereby forbidden to create any further debt or obligation, either by the loan of the credit of the State, by guaranty, endorsement or otherwise, except for the ordinary and current business of the State without first submitting the question as to the creation of such new debt, guaranty, endorsement or loan of its credit to the qualified electors of this State at a general State election; and unless two-thirds of the qualified electors of this State, voting on the question, shall be in favor of increasing the debt, guaranty, endorsement, or loan of its credit, none shall be created or made."

The petitioner concedes, as he must, that the issuance of the certificates of indebtedness authorized under this Act

would be under circumstances similar to those under which previous certificates of indebtedness have been issued, and recognizes the binding effect of the decisions of this Court construing these provisions of the Constitution in the case of *State ex rel. Richards v. Moorer, supra.* It is contended, however, that in a question of this nature, involving the construction of organic law, and where there is presented for the consideration of the Court a question of constitutional limitation upon legislative power, the doctrine of *stare decisis* is not applicable.

This section of the Constitution has been construed by this Court in a long line of decisions, most of which, if not all, are referred to in the case of *State ex rel. Richards v. Moorer, supra,* and this Court will not now depart from the holdings therein announced.

We have consistently held that bonds issued by the State or its political subdivisions which are payable·out of special funds do not create debts of the State or its political subdivisions, although the full faith, credit, and taxing powers of the State or its political subdivisions are pledged for the payment of the same, where the revenues provided for are reasonably sufficient to pay the principal and interest of the obligations incurred.

The petitioner, however, takes the dual position:

(a) That the Act removes the safeguards from a proper determination of the sufficiency of the revenues, in that it does not require the approval of the Governor, but allows the State Highway Commission itself to determine the sufficiency of this revenue.

It is clear from the authorities already referred to herein that this does not violate the constitutional provision, as it is purely a question for the Legislature to prescribe by whom the sufficiency of the revenues is to be determined.

(b) The further point is made that the revenues are insufficient.

Attached to the return of the respondents is the State Highway Commission's estimate of the revenues, and the record of revenues received in previous years, together with the debt service on outstanding obligations, which clearly shows that the revenues are reasonably sufficient to take care of the obligations intended to be issued, to wit, the sum of $1,500,000.00, which the State Treasurer, pursuant to the request of the State Highway Commission, will issue.

The contention of the petitioner on this ground must be overruled.

It is next contended that the Act violates Article 3, Section 1 of the Constitution, in delegating to the members of the legislative delegations from the judicial circuits of the State the right to elect district highway commissioners.

In *State ex rel. Richards v. Moorer, supra,* after reviewing authorities from this State and numerous other jurisdictions, including the Federal Courts, the Court had this to say:

"All other authorities aside, the question seems to me to be settled by the decision in *Ruff v. Boulware,* 133 S. C., 420, 131 S. E., 29, 30. In that case the court construed a statute authorizing the establishing of a chain gang in Fairfield county 'upon the unanimous written consent of the legislative delegation' from that county 'to be filed with the Board of County Commissioners.' A reading of the Act discloses that the consent of the legislative delegation, necessary for the operative effect of the statute under its provisions, was not predicated upon the determination of any fact or state of facts by the delegation as a prerequisite to such consent, but was left entirely to the arbitrary decision of the delegation itself. In upholding the constitutionality of the statute, the court, speaking through Mr. Justice Marion, said:

" 'Appellants' exceptions * * * make the two points: (1) That the statute is, in effect, a delegation of the legislative power of the state, in contravention of Section 1,

Art. 3, of the Constitution, in that it is not in itself a definite and final exercise of the legislative power vested in the General Assembly, but undertakes to make a law dependent upon the arbitrary consent of the legislative delegation, without laying down any "rule by which, or event upon which, the legislative delegation is to exercise its consent." * * *

" 'As to the first of the foregoing contentions, we are clearly of the opinion that the act may not soundly be declared null and void as an unconstitutional delegation of legislative power.

" ' "Where an act is clothed with all the forms of law, and is complete in and of itself, it is fairly within the scope of the legislative power to prescribe that it shall become operative only on the happening of some specified contingency. Such a statute lies dormant until called into active force by the existence of the conditions on which it is intended to operate. * * * This contingency may consist of some act or acts to be performed by public officers, or by the people or parties interested; or it may be the recommendation of a grand jury, or consist of the determination of some fact or state of things on the part of the people or a municipality or other body of officers. The nature of the condition is broadly immaterial." 12 C. J., pp. 864-865, § 365.

" 'The act here in question was complete in form and substance, and became a law *in præsenti* upon its approval by the Governor. Its scope and object, in so far as the exercise of the state's legislative power is concerned, were broadly to permit and authorize, upon the terms and conditions prescribed, the establishment and operation of a chain gang in the county of Fairfield—a permission and authority which, it seems, had been, expressly or impliedly, withdrawn or denied by a prior act of the Legislature abolishing the chain gang in Fairfield county. 32 Stat. at Large, 70. By prescribing, in effect, that the act should only become operative upon the filing of the written consent of the legislative dele-

gation with the board of county commissioners, the General Assembly parted with and delegated no legislative power. The public officials constituting the legislative delegation were given no power to add a jot to, or take a tittle from, the law enacted. Nothing was left to their discretion as to what should constitute the form and substance of the statute, and, regardless of whether or not it ever became operative by compliance with the condition prescribed by the Legislature itself, it was nevertheless a valid law, in the sense that it was a full and complete expression of the Legislative will and power. As is well said in Sutherland on Statutory Construction, § 68:

" ' "The true distinction is between the delegation of power to make the law, which involves a discretion as to what the law should be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no objection can be made."

" 'In so far as the provision with respect to the filing of "consent" by the legislative delegation, the contingency upon the happening of which the law was to go into effect, confers any authority or discretion on the persons designated, it is an authority or discretion as to the execution of the law and not as to what the law shall be. In the limited time available to the writer, a discriminating reference to, and citation of, pertinent decisions from other jurisdictions tending to support that view cannot be undertaken. The conclusion, as we apprehend, is in substantial accord with the views of this court on the question of invalid delegation of legislation as expressed in *Port Royal M. Co. v. Hagood*, 30 S. C., 525, 9 S. E., 686, 3 L. R. A., 841; *Burriss v. Brock*, 95 S. C., [104], 110, 79 S. E., 193, and *Lillard v. Melton*, 103 S. C. [10], 18, 87 S. E., 421.' "

And continuing, the Court said:

"There is a distinction, however. between delegating power to make a law and conferring authority or discretion

as to its execution. If a legislative act is clothed with all the forms of law and is complete in itself in form and substance, if the officer, board, or commission to whom the authority is alleged to have been delegated is given no power to add to or to take away from the law as enacted, if nothing is left to discretion as to what shall constitute the form and substance of the statute, and if the act embodies a full and complete expression of the legislative will, matters which may be fairly regarded as relating to the administration and execution of the statute, even though involving discretion, do not constitute an unauthorized delegation of legislative authority.

"Judge Cooley says further (8th Ed.), 228: 'The maxim that power conferred upon the Legislature to make laws cannot be delegated to any other authority does not preclude the Legislature from delegating any power not legislative which it may itself rightfully exercise. It may confer an authority in relation to the execution of a law which may involve discretion, but such authority must be exercised under and in pursuance of the law. The Legislature must declare the policy of the law and fix the legal principles which are to control in given cases; but an administrative officer or body may be invested with the power to ascertain the facts and conditions to which the policy and principles apply. If this could not be done there would be infinite confusion in the laws and in an effort to detail and to particularize, they would miss sufficiency both in provision and execution.' "

It was held in *State v. Bowden,* 92 S. C., 393, 75 S. E., 866, 870: " 'The truth is that the power of appointing or electing to the office does not necessarily and ordinarily belong to either the legislative, the executive, or the judicial department. It is commonly exercised by the people, but the Legislature may, as the law-making power, when not restrained by the Constitution, provide for its exercise by either department of the government, or by any person or

association of persons whom it may choose to designate for that purpose. It is an executive function when the law has committed it to the executive, a legislative function when the law has committed it to the Legislature, and a judicial function, or at least a function of a judge, when the law has committed it to any member or members of the judiciary.' "

See, also, *Heyward v. Long,* 178 S. C., 351, 183 S. E., 145.

And in *Santee Mills v. Query, supra:*

"It is elementary that, while the Legislature may not delegate its power to make laws, it may vest in administrative officers and bodies a large measure of discretionary authority, especially to make rules and regulations relating to the enforcement of the law."

See, also, *Little v. Willimon,* 103 S. C., 50, 87 S. E., 435; *Elledge v. Wharton,* 89 S. C., 113, 71 S. E., 657; *Clarke v. South Carolina Public Service Authority, supra;* 22 R. C. L., 424, § 73; 12 C. J., 864, § 365.

It seems clear to us that the principles announced in the foregoing authorities, when applied to the provisions of the Act in question, giving to the various legislative delegations power to elect commissioners from the fourteen judicial circuits, show conclusively that the petitioner's contention that such granting of power constitutes an unconstitutional delegation of legislative authority is groundless. For the reasons indicated, the position of the petitioner cannot be sustained. The Act, after its passage, ratification, and enrollment, was a complete fulfillment of the legislative will. It contained in regard to the election of the Highway Commissioners full and authoritative directions, and no other Act even remotely legislative remained to be done. The composite delegations were the bodies and agencies to carry into effect the fully enacted law.

We next consider, does the Act violate Article 4, Sections 12, 17, and 19 of the Constitution, in that it permits the

commissioners to exercise their duties without a commission from the Governor?

From the earliest years of our judicial history our Court has held that a commission is merely evidence of appointment or election to public office. As stated in *Macoy v. Curtis,* 14 S. C., 367: "In our government certainly the election is the origin and foundation of the right to all elective offices. This would seem to be the correct view from principle, and we also regard it well settled by authority of this state, that neither the existence of an office nor the term of time for which it exists, depends upon the commission, which is only evidence of the appointment or election." *State v. Billy,* 2 Nott. & McC., 356; *Jeter v. State,* 1 McCord, 233; *State v. Lyles,* 1 McCord, 238, 239; *Kottman v. Ayer,* 3 Strob., 92; *State v. Toomer,* 7 Rich. [216], 227; *Ex parte Smith.* 8 S. C.[495], 515.

It is said in the case of Jeter that the "tenure by which an office is held, does not depend upon the commission which the governor may think proper to give. It is only evidence of the appointment. The tenure must depend upon the provisions of the act creating the office, or upon the Constitution."

In the case of Lyles, the Court decided that "the commission does not confer the office; it is only evidence of it, and cannot change the term by which the constitution declares that it shall be held. As soon as an ordinary is elected, he is an officer under the constitution, and entitled to all the rights and immunities conferred by that instrument."

In the case of *Ex parte Smith,* Judge McIver says: "It is very obvious that in a government like ours, where the people are the source of all powers, that the title to an elective office depends upon, and is derived from, the election—the choice of the people, as manifested at the ballot-box." *State v. Brown,* 14 S. C., 380.

In the case of *State v. Billy, supra,* the question at issue is directly and illuminatingly discussed by Mr. Justice Richard-

son. In delivering the opinion of the Court, he says: "I will now turn to the most important question made in the case: Is a commission indispensable, in order to discharge the duties of a public office? All that we find in the constitution upon the subject, is in the 3rd sec. of the 8th art., to wit: [1790] 'All commissions shall be in the name, and by the authority of the State of South Carolina, and be signed by the governor.' "

Continuing, he said: "Regarding, then, the common law, we easily perceive why a commission may be essential under the English government. There, in a word, it is at once the expression of the royal will, and the partial delegation of his power. There, for the purposes of his office, the officer is the agent of the king, and the commission is his letter of attorney, wherein he finds his power, of what kind, and to what extent. But take away the reasons, and the same consequences do not follow. In this country the officer derives no power from the chief magistrate. In this State, indeed, he has not much to spare; and the commission becomes the mere certificate of election, or the formal annunciation of appointment. And the incumbent, both in theory and practice, is to regard the constitution and laws of the people, whose minister he is, as his only letters of attorney. Here, then, the commission constitutes no part of the authority or qualification of an officer, and in a question upon his functions or immunities, has as little to do as the mode of conveyance through which the commission may be sent to him. See *Marbury v. Madison,* 1 Cranch, 137 [2 L. Ed., 60]. And the true constitutional qualification, I mean the oath of office, may be taken before or after, and has no essential relation to, or dependence upon, the commission."

In a case passing upon the same point, *State v. Ephraim Lyles, supra,* the Court said: "The governor, in granting a commission, acts ministerially, and therefore ought to make it conform to the law and the constitution. The commission does not confer the office; it is only evidence of it, and can-

not change the tenure by which the constitution declares that it shall be held."

In the case of *Ex parte Smith, supra,* the Court adopted the following with approval from *Johnston v. Wilson,* 2 N. H., 202, 9 Am. Dec., 50: " 'On general principles, the choice of a person to fill an office constitutes the essence of his appointment. * * * After the choice, if there be a commission, or an oath of office, or any ceremony or inauguration, these are forms only, which may or may not be necessary to the validity of any acts under the appointment, according as usage and positive statute may or may not render them indispensable.' "

It was held in *Shuck v. State ex rel., Cope,* 136 Ind., 63, 35 N. E., 993, 995, that: "The governor's commission is nothing more than a convenient form of evidence that the title to an elective office has been vested in a person by the votes of the people. Such a commission is not conclusive evidence of anything except its own existence."

The rule announced in the foregoing authorities is in accord with the great weight of authority.

In 46 C. J., 954, § 70, it is said: "While the appointment of an officer is usually evidenced by a commission, it is not essential as a general rule to the validity of the appointment that a commission issue. * * * "

And to the same effect, see 22 R. C. L., 443, § 98.

The constitutional provisions invoked by the petitioner are Article 4, § 12, which provides that he (the Governor) "shall take care that the laws be faithfully executed in mercy"; Article 4, § 17, "He [the Governor] shall commission all officers of the State"; and Article 4, § 19, which provides: "All grants and commissions shall be issued in the name and by the authority of the State of South Carolina, sealed with the Great Seal, signed by the Governor, and countersigned by the Secretary of State."

The Act prescribes, in Section 1, par. (b), the manner

and method of electing district highway commissioners, and then provides: "When the election is completed the chairman and secretary of joint legislative delegations of each highway district shall immediately transmit the name of the person elected to the Secretary of State, who shall forthwith issue to such person, after he has taken the usual oath of office, a certificate of election as district highway commissioner. The Governor shall thereupon forthwith issue a commission to such person and pending such issuance the aforementioned certificate of election shall be a sufficient warrant to such person to perform all of the duties and functions of his office as commissioner."

It is alleged in Paragraph 2 of the petition that the respondents, other than E. P. Miller, State Treasurer, are now acting as the State Highway Commission of South Carolina, purporting to have been elected under the provisions of the Act under discussion, and in Paragraph 7 of the petition it is alleged that the respondents other than the State Treasurer have been named as district highway commissioners pursuant to the provisions of the Act of May 14, 1936 (39 St. at Large, p. 1557), by a majority of the members from their respective judicial circuits, and that each of them, other than the respondent, G. W. McKown, holds a certificate of election issued by the Secretary of State of South Carolina, but that none of them, as your petitioner is informed and believes, has been commissioned by the Governor of the State of South Carolina. By their return, these allegations of fact in the petition are not only admitted, but the respondents allege such facts to be true; and, further, that they are the duly elected and qualified commissioners from their respective judicial circuits of the State, pursuant to the Act (G. W. McKown, commissioner elected from the Seventh Judicial Circuit not yet having qualified) approved May 14, 1936, and as such commissioners now constitute the South Carolina State Highway Commission, regularly and lawfully organized, and are in

the active discharge of their duties under the provisions of the said Act.

The conclusion is inescapable under the authorities ██ cited that these respondents as commissioners are not dependent upon the Governor's commission to enter upon and fully discharge the duties and functions of their office. While it is true that the Constitution, Article 4, § 17, provides that the Governor shall commission all officers of the State, this is a mandate to him, and in the event of his neglect or failure or refusal to issue such a commission, it does not affect the right of the person duly elected to public office to discharge the duties of such office. There is no provision in the Constitution which expressly or impliedly forbids a person duly elected to office from performing the duties of his office without first obtaining a commission.

As evidenced by all of the cases herein cited, the Governor in issuing a commission acts merely ministerially; the commission does not confer the office nor the term or time for which it exists depends upon the commission, which is only evidence of the appointment or election.

The Act in question provides that the Governor shall ██ issue commissions to the respondents, but it does not make the possession of the commission a prerequisite to the assumption of the office and the discharge of its duties. It does provide that, pending such issuance, the certificate of election shall be a sufficient warrant to such person commissioner) to perform all of the duties and functions of the office of commissioner.

Under the view we hold, the respondents may fully discharge the duties of their office with or without a commission under that portion of the Act which we have quoted and under the authorities cited.

The objection of the petitioner is· clearly untenable, and cannot be sustained.

The next questions to be considered are: (a) Does the fact that the issuance of these certificates of indebtedness so authorized by the State Highway Commission at a meeting at which only 13 commissioners were present and qualified, make void the action of the commission? and (b) is the Act unconstitutional, in that it does not vest authority in the commission if there is a vacancy?

There would seem to be no shadow of merit in these positions. Bodies and boards of this kind operate and lawfully function with a quorum, usually consisting of a majority, and a vacancy under the Act would not be fatal; the action of a majority being sufficient. *Nicholson v. Villepegue,* 91 S. C., 231, 74 S. E., 506.

It was held in *State ex rel. Davis v. State Board of Canvassers,* 86 S. C., 451, 68 S. E., 676, 679: "The rule is that 'where a body or board of officers is constituted by law to perform a trust for the public, or to execute a power or perform a duty prescribed by law, it is not necessary that all should concur in the act done. The act of the majority is the act of the body.' *State ex rel., Abbeville County v. McMillan,* 52 S. C., 60, 29 S. E., 540."

This contention must, therefore, be overruled.

The final question presented is whether the action of the General Assembly in terminating the terms of office of certain of the commissioners whose terms have not expired under the Act of 1924 (33 St. at Large, p. 1168), as amended (Code 1932, § 5867), deprived those commissioners of their property without due process of law.

While it is true that under the decision of *Hearon v. Calus,* 178 S. C., 381, 183 S. E., 13, the title of the commissioner's office was held to be a property right, entitled to protection of the due process clauses of the State and Federal Constitutions, it is due process for the Legislature that created the office and fixed the term to change it at its will. The commissioners took title to the office subject to the knowledge that the Legislature could abolish the office or provide for

the election of members in a method different from that established in the Code of 1932.

In *State v. McDaniel,* 19 S. C., 114, the question was whether the holder of the office of register of mesne conveyances had such a vested right in that office that the Legislature could not divest it. The Court said: "As to this, it is only necessary to say that a public office, created by legislative enactment, never escapes from the control of the legislature; on the contrary, such office exists by sufferance only, as it were. If there be no constitutional inhibition, its powers and duties may be modified or limited as the public interest may require, or the entire office may be abolished at the will of the legislature. See the numerous authorities cited by the relator, and especially our own case of *Alexander v. McKenzie,* 2 S. C., 81."

In *State v. Hough,* 103 S. C., 87, 93, 87 S. E., 436, 437, the language of Mr. Justice Hydrick is as follows: "Those holding offices created by the Legislature hold them subject to the legislative will. The power that creates an office can impose such limitations and conditions upon the manner of filling it, and the tenure and the exercise of the duties of the office, and may modify or abolish any of these, or the office itself, as its wisdom may dictate, when no provision of the Constitution is contravened in doing so." *State v. Rhame,* 92 S. C., 455, 75 S. E., 881, Ann. Cas., 1914-B, 519; *Lillard v. Melton, supra.* And see *Heyward v. Long, supra.*

This contention must also be overruled.

The judgment of the Court is that the Act in question is constitutional and valid; the injunction prayed for is denied; and the petition dismissed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER and BONHAM concur.

MR. JUSTICE BAKER did not participate.