13695

GLYMPH *ET AL.* v. SMITH, COMPTROLLER, *ET AL.*

(170 S. E., 913)

*Messrs. Robinson & Robinson,* for plaintiffs,

*Messrs. Hughs & Hughs,* for respondents,

September 27, 1933.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

It is sought in this case to have an Act of the General Assembly (38 Statutes at Large, p. 28), approved February 4, 1933, declared unconstitutional, and the defendants enjoined from using funds of Oconee County for the support and maintenance of any Court created thereby.

The Act in question purports to establish a Civil and Criminal Court "for that portion of Oconee County bounded by the Seneca River and its headwaters, the North Carolina line, Chattooga River and the Tugaloo River, and the Anderson County line" (Section 1). The plaintiffs attack the validity of the statute upon several grounds, alleging that the General Assembly was without constitutional authority to create such a Court as the Act undertakes to set up. The defendants, by way of answer and return, deny the allegations of the complaint, and set out with particularity certain alleged facts as showing the necessity for the Court's existence.

It is contended, in the first place, that the Act is invalid in that it violates Section 1 of Article 5 of the Constitution, which provides that "before a County Court shall be established in any county it must be submitted to the qualified electors and a majority of those voting must vote for its establishment." Plaintiffs argue that, although a small portion of the county was excluded from the Court's jurisdictional area, a County Court was clearly intended to be created, as is shown, *inter alia*, by the following provisions of the Act: That the Judge of the Court shall be a resident of the county and shall summon the grand jury, that his salary and that of the court solicitor shall be paid by the county treasurer, upon vouchers issued by the supervisor of the county, that the clerk of the Circuit Court shall act as the clerk of this Court and shall enter its judgments among the county records, and that the sheriff of the County shall be subject to its orders.

It is not disputed, as alleged by the defendents, that "the trial dockets of the Court of General Sessions and Common Pleas for Oconee County are so congested that neither of the courts is able to approach a clearing of its docket," that "by far the major portion of the cases congesting the Sessions docket are misdemeanors, many of a trifling nature, while approximately one-half of the cases on the Common Pleas docket involve matters of less than one thousand dollars in value," that "many of the cases of necessity are continued from term to term." and that "the expense of the Courts has grown to the point where it is burdensome to the county." With these facts before it, the Legislature, we may safely assume, deemed it necessary to establish in Oconee County some Court inferior to the Circuit Court, for the purpose of relieving the conditions alleged by making triable in such Court the smaller cases of a civil nature and the many misdemeanors on the docket of the General Sessions Court. It, therefore, created the court here attacked.

That the General Assembly may establish under Section 1 of Article 5 of the Constitution such Courts, "inferior to Circuit Courts," as it may deem necessary, is not open to argument. See *Grimball v. C. W. Parham Co.,* 96 S. C., 443, 81 S. E., 186; *City of Greenville v. Foster,* 101 S. C., 318, 85 S. E., 769; *City of Columbia v. Smith,* 105 S. C., 348, 89 S. E., 1028. A County Court necessarily includes the entire county in its jurisdictional area, and failure to so inculde the whole county is a strong indication of legislative intent not to establish such a Court. But it is argued that the General Assembly cannot, by arbitrarily clipping off a part of the county without regard to the boundary lines of townships, etc., as was done in this case, avoid the provision of the Constitution relating to the creation of County Courts. While the defendants offer no explanation why a small part of the county was excluded, we know of no constitutional provision that limits the power of the Legislature to fix the territorial jurisdiction of these "inferior Courts" as, in

the circumstances, it may think proper, or that imposes upon the lawmaking body the duty to make the territorial boundaries of such Courts to coincide with any political subdivision of the county.

Upon careful consideration of the matter, we do not think that the contention of the plaintiffs may soundly be sustained upon the grounds stated and argued by them. We cannot say that the fact that the General Assembly provided for the payment of certain of the Court's officers by the County Treasurer is conclusive, in the face of other undisputed facts, of legislative intent to create a County Court. Nor can we say that such intent is shown by the fact that the Legislature imposed upon certain county officers duties to be performed by them in connection with the functioning of this Court; on the contrary, we think it is rather indicative of legislative effort to reduce Court expenses.

It is also contended that the Act is unconstitutional ■■ in that "it proposes to take funds belonging to Oconee County and all of its taxpayers and use the same for the benefit of citizens and taxpayers of a portion of the County."

Section 5 of Article 10 of the Constitution is, in part, as follows: "The corporate authorities of counties * * * may be vested with power to assess and collect taxes for corporate purposes." Section 7 of Article 1: "No tax * * * shall be * * * levied, under any pretext whatsoever, without the consent of the people or their representatives lawfully assembled." Section 5 of Article 1: "The privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged, nor shall any person be deprived of life, liberty or property without due process of law, nor shall any person be denied the equal protection of the laws."

While the term "corporate purposes," used in Section 5 of Article 10, is not there defined, the General Assembly is empowered by Section 6 of Article 10 "to authorize any county * * * to levy a tax * * * to maintain and sup-

port prisoners, pay jurors, county officers, and for litigation * * * and Court expenses." It is evident, when these two sections are considered together, that the purposes for which a county may levy; a tax, as specifically stated in Section 6, are embraced within the term "corporate purposes" as used in Section 5. The Act before us discloses that no provision is made for the use of any funds except for the payment of certain officers of the Court, and of jurors and witnesses. We conclude, upon reflection, that such expenditures are embraced in the above-quoted provisions of Section 6, and are therefore for "corporate purposes" within the meaning of that term as used in Section 5 of Article 10. Nor is the contention sound that the statute violates Section 7 of Article 1 of the Constitution. It must be conceded that whatever tax is imposed by the Act was authorized by the representatives of the people lawfully assembled.

■ It is not disputed that if the Court created by the present Act is permitted to function, the admitted congested condition of the trial dockets of the Circuit Court will be greatly relieved, that a speedy hearing will be given all cases set for trial in that Court, and that Court expenses will be materially reduced, which will inure to the benefit of all the taxpayers of the county. Taking these undisputed contentions to be true, it seems to us that those citizens and taxpayers of the county residing without the jurisdictional area of this Court will be materially benefited by its creation. The contention of the plaintiffs, therefore, that the Act violates Section 5 of Article 1 of the Constitution is without substantial merit.

■ It is also argued that a proper construction of the supply bill (38 St. at Large, p. 1021), item 5 (Section 2) of which provides, "Court expenses, $4,000.-00," shows that the funds there approperated cannot be used for the benefit of this Court. This contention cannot be sustained. We think that the term "Court expenses," being unmodified and unrestricted, is broad enough to include the legitimate expenses of any Court within the county in ex-

istence at the time of the passage of the supply bill. Further-more, it appears that the salaries of the officers of this Court are being paid under the provisions of a statute (38 Stat. at Large, p. 334) enacted after the passage of the supply bill.

It is further urged that "the Act is void and uncon-stitutional because it is indefinite as to the area covered."

By reference to Section 1 of the statute, it will be seen that one of the boundaries of the Court's area is given as "the Seneca river and its headwaters." Examination of a map of Oconee County furnished by counsel reveals that the Seneca River is formed by the intersection of the Little River and the Keowee River, and that the Keowee River is formed by the junction of the Toxiway River and the Whitewater River, some miles south of the North Carolina line. The plaintiffs contend that even if it should be con-ceded that the Keowee River is intended as a boundary line of the Court, it is impossible to say with any certainty whether the Court's jurisdiction extends to the area be-tween the Whitewater River and the Toxiway River. While it is true that some confusion as to the Court's area arises from the use of the word "headwaters" as a boundary, we are of opinion, and so hold, that the Court's true boundary line, as intended and fixed by the boundary given—"the Seneca River and its headwaters"—is the Seneca River, the Keowee River, and the Toxiway River.

The final contention is that the Act is invalid, in that it deprives "certain defendants of their common law right to a trial by a common law jury of twelve men."

Section 1 of Article 5 of the Constitution provides that none of the "inferior Courts," which the General Assembly is empowered by that section to establish, "shall ever be in-vested with jurisdiction to try cases of murder, man-slaughter, rape or attempt to rape, arson, common law bur-glary, bribery or perjury." The Court here created may try,

under the terms of the Act, "all cases less than felonies where the punishment does not exceed ten years imprisonment or $5,000.00 fine" (Section 2). It will be observed that it is not specifically provided that the Court is without jurisdiction to try the cases named in Section 1 of Article 5 of the Constitution, and the Act, in so far as it may thereby be in conflict with that section, is invalid. As the General Assembly, however, is not denied by the Constitution the power to vest such "inferior Courts" with jurisdiction to try criminal cases other than those mentioned in Section 1 of Article 5, and as the Constitution provides that "the jury in cases civil or criminal in all * * * Courts inferior to Circuit Courts shall consist of six" (Section 22 of Article 5), the contention that the Act is invalid for the reason stated, is without merit.

The judgment of the Court is that the injunction prayed for be refused and the complaint dismissed.

And it is so ordered.

MR. CHIEF JUSTICE BLEASE, and MESSRS. JUSTICES CARTER and BONHAM concur.