### 16020

COTHRAN v. MALLORY *ET AL.*
(45 S. E. (2d) 599)

*Mr. Sam N. Burts,* of Spartanburg, for Appellant.

*Messrs. C. E. Daniel,* County Attorney, and *Rufus M. Ward,* of Spartanburg, for Respondents,

December 9, 1947.

OXNER, J.: The question to be determined on this appeal is whether the General Assembly may authorize a county to levy a tax and issue bonds for the purpose of erecting a public auditorium.

In 1946, the General Assembly created the "Spartanburg Memorial Auditorium Commission" for the purpose of establishing in the City of Spartanburg a municipal auditorium to be known as "The Spartanburg Memorial Auditorium". Act March 28, 1946, 44 St. at Large, page 2455. This Commission was authorized to plan, construct and operate this auditorium, and to borrow the funds needed to carry out the provisions of the Act by the issuance of bonds, the payment of which was to be secured solely by the property held by the Commission and by the pledge of any revenue derived from the operation of the auditorium. The Act provided that the property or any equity therein should "belong to the City and County of Spartanburg in equal proportions", but expressly prohibited the Commission from creating any obligation against either the City or County of Spartanburg. It was contemplated that the revenue to be derived from the operation of the auditorium would be sufficient to pay the principal and interest on all bonds issued by the Commission.

The members of the Commission were duly appointed, qualified and entered upon the discharge of their duties. It soon became apparent that the costs of the auditorium could not be financed in the manner contemplated by this Act. Thereafter a special election was regularly called and held on the question of whether the City of Spartanburg should

issue bonds in an amount not to exceed $500,000.00, secured by a pledge of the full faith and credit of said City, for the purpose of paying one-half the cost of a memorial auditorium to be held, managed, operated and controlled by the Commission created by said Act. The bonds were to be issued, however, "on condition that the County of Spartanburg match dollar for dollar the funds advanced by the City of Spartanburg for such purpose". The election resulted overwhelmingly in favor of the issuance of the bonds.

At the 1947 session of the General Assembly all proceedings in connection with said election were validated, ratified and confirmed, and the City of Spartanburg was authorized and empowered to issue said bonds and turn the proceeds over to the Spartanburg Memorial Auditorium Commissilon created under the Act of 1946, provided the County of Spartanburg simultaneously turned over to said Commission a like amount to be disbursed for the same purpose. Act No. 545 of the Acts of 1947, 45 St. at Large, page 1467.

At the same session of the General Assembly there was passed an act authorizing and directing the County Board of Spartanburg County to issue bonds in an amount not exceeding $500,000.00, the payment of which was to be secured by the full faith and credit of the County of Spartanburg. Act No. 546 of the Acts of 1947, 45 St. at Large, page 1471. This Act directed that the proceeds of these bonds be turned over to the Spartanburg Memorial Auditorium Commission provided a similar amount was turned over to said Commission by the City of Spartanburg. The Commission was directed to use the funds so received for the purpose of acquiring a site and erecting thereon a memorial public auditorium to be held, managed, operated and controlled by said Commission in accordance with the Act of 1946 and to be owned jointly by the City and County of Spartanburg in equal proportions. After setting forth in the preamble of this Act various needs for such an auditorium by the City and County of Spartanburg, the following legislative deter-

mination is made in Section 1: "That it is hereby declared as a matter of legislative determination that in order to promote the educational, cultural, physical, civic, social, and moral welfare of the public in the Spartanburg area and to protect the health, safety, mental, physical, moral and spiritual well-being of the public in such area, it is necessary in the public interest to establish a public municipal auditorium to be known as The Spartanburg Memorial Auditorium, which said building will serve as a central meeting place for public gatherings, school commencement exercises, school plays and entertainments, educational rallies, educational lectures, operas, plays and dramatic performances, Parent-Teacher Association meetings, civic enterprises, school basketball games, philanthropic, charitable and community betterment assemblies, and will serve as a center for educational and public welfare activities for the City and County of Spartanburg".

The 1946 Act creating the Spartanburg Memorial Auditorium Commission provided that it should consist of eight members. In 1947 this Act was amended so as to reduce the membership to six. Act No. 547 of the Acts of 1947, 45 St. at Large, page 1476. Three of these members are appointed by the Governor upon the recommendation of the Legislative Delegation from Spartanburg County and three by the Governor upon the recommendation of the Mayor and City Council of Spartanburg.

This is a taxpayer's suit to enjoin the County Board of Spartanburg County from issuing and selling bonds pursuant to Act No. 546 heretofore mentioned. The validity of said Act is challenged upon the grounds (1) that it contravenes Section 5 of Article 10 of the Constitution in that the bonds are not sought to be issued for a corporate purpose, and (2) that the purpose is not among those enumerated in Section 6 of Article 10 for which the General Assembly is empowered to authorize a county to levy a tax or issue bonds. The case was heard upon the petition of the taxpayer and a demurrer filed by the County Board. From an order upholding the

validity of the Act and sustaining the demurrer, petitioner has appealed.

In approaching the discussion of these questions, we keep in mind the well established principles that except as restricted by the Constitution, the power of the General Assembly is plenary; that every presumption will be made in favor of the constitutionality of a legislative enactment; and that an act will not be declared unconstitutional unless its invalidity is manifest beyond a reasonable doubt. *Floyd v. Parker Water and Sewer Subdistrict et al.,* 203 S. C. 276, 17 S. E. (2d) 223; *Moseley et al. v. Welch et al.,* 209 S. C. 19, 39 S. E. (2d) 133; *Smith v. Robertson et al.,* 210 S. C. 99, 41 S. E. (2d) 631. Equally well settled is the principle that the question of whether the purpose for which a tax is imposed is a public one is primarily for the legislature, and the courts will not interfere with a legislative determination that the purpose is a public one unless such finding is clearly wrong. *McNulty v. Owens, Mayor, et al.,* 188 S. C. 377, 199 S. E. 425; *Ashmore et al. v. Greater Greenville Sewer District et al.,* S. C., 44 S. E. (2d) 88.

Section 5 of Article 10 provides that "the corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes * * *." Section 6 of the same article is in part as follows: "The General Assembly shall not have power to authorize any county or township to levy a tax or issue bonds for any purpose except for educational purposes, to build and repair public roads, buildings and bridges, to maintain and support prisoners, pay jurors, County officers, and for litigation, quarantine and court expenses and for ordinary County purposes, to support paupers, and pay past indebtedness".

It will be observed that Section 6 limits to certain purposes therein enumerated the power of the General Assembly to authorize a county or township to levy taxes. *Moseley*

*et al. v. Welch et al., supra; Smith v. Robertson et al., supra.*
In speaking of the corporate purpose of a county or township, the Court, in *Battle et al. v. Willcox et al.,* 128 S. C. 500, 122 S. E. 516, 517, said: "In the same language that counties are erected into bodies 'politic and corporate' (Article 7, § 9), townships are also constituted bodies 'politic and corporate' (Article 7, § 11). The corporate purposes of the county as such are not expressly definded and set forth either by the Constitution or by statute. That the object or purpose of constituting townships bodies politic and corporate is essentially identical in character with that contemplated in making counties bodies politic and corporate would seem to be obvious. That corporate purpose, broadly speaking, is the object sought to be attained by the creation of all subordinate governmental agencies or municipal corporations, *viz.* the promotion of the public good through the exercise by these agencies or bodies politic of such powers as may be delegated to them by competent authority".

It was held in *Glymph et al. v. Smith, Comptroller, et al.,* 170 S. C. 486, 170 S. E. 913, 915, that when Sections 5 and 6 of Article 10 "are considered together, that the purposes for which a county may levy a tax, as specifically stated in section 6, are embraced within the term 'corporate purposes' as used in section 5". It, therefore, follows that if the erection of a public auditorium is for a purpose enumerated in Section 6, it would be for a corporate purpose within the contemplation of Section 5.

We think a public auditorium may be properly classified as a "public * * * building" within the meaning of that term as used in Section 6. We shall not undertake to formulate a general definition which could be inflexibly applied. It was undoubtedly intended that the term should embrace such buildings as a court house, jail and other like structures. It is equally clear that it does not include every building where the public congregates in considerable numbers. We held in *Parrott v. Gourdin et al.,*

205 S. C. 364, 32 S. E. (2d) 14, that reception and ticket rooms and hangars used in connection with an airport do not constitute public buildings within the contemplation of this section of the Constitution. It was held in *Battle et al. v. Willcox et al., supra,* that a hospital erected by a township was a public building within the purview of this section. The Court there stated that such an institution subserves a public purpose and that a building essential to the discharge of that function would be deemed a public building "in the sense that it would promote a public purpose or subserve a public use". To the same effect is the more recent case of *Smith v. Robertson et al., supra.* It may be true that a public auditorium is not as essential to the public welfare as a hospital but the urgency of the need is not alone the test by which we are to determine whether a structure is a public building within the meaning of Article 10, Section 6 of the Constitution.

The Court stated in *Ashmore et al. v. Greater Greenville Sewer District et al., supra* (44 S. E. (2d) 97), "that a publicly owned and operated auditorium serves a useful purpose will not be gainsaid in this day", and held that the General Assembly could create by statute a special district of designated territory and authorize it to issue bonds for the purpose of constructing and operating such an auditorium. If, as held in this case, a public auditorium promotes a public purpose for which taxes may lawfully be levied, we think it follows that the proposed Spartanburg Memorial Auditorium, which will be jointly owned by the County and City of Spartanburg and under the control and management of public officers appointed in the same manner as many other officers of the various governmental subdivisions of the State are appointed and which will be used to promote the purposes named in the Act under consideration, is such a public building as was intended to be excepted from the limitation imposed by Section 6 of Article 10 of the Constitution.

It was suggested but not determined in *Ashmore et al. v. Greater Greenville Sewer District et al., supra,* that the levy-

ing of taxes and issuance of bonds for the construction of a public auditorium might be upheld as an expenditure "for educational purposes" within the meaning of that term as used in Section 6 of Article 10. It is clear that some of the uses to be made of this auditorium as specified in Section 1 of the Act would subserve an educational purpose but we need not determine whether the dominating motive is to subserve such purpose.

Judgment affirmed.

BAKER, CJ., and FISHBURNE, STUKES and TAYLOR, JJ., concur.