16202

POWELL *ET AL.* v. THOMAS *ET AL.*
(52 S. E. (2d) 782)

*Messrs. Hemphill & Hemphill,* of Chester, *for Petitioner,*

*Messrs. J. E. McDonald,* of Chester, and *Huger Sinkler,* of Charleston, *for Respondents,*

March 30, 1949.

OXNER, Justice.

This action, which we authorized to be brought in the original jurisdiction of this Court, involves the validity of Act No. 951 of the Acts of the General Assembly for 1948, 45 St. at L. 2504, which authorizes the issuance of general obligation bonds of Chester County in an amount not exceeding $125,000.00 for (1) the "construction and erection of a War Memorial of Chester County adjacent to Chester County Court House, at a cost of Sixty-five Thousand ($65,-000.00) Dollars, or so much thereof as may be necessary"; (2) the "construction and erection of Health Centers at Great Falls, Lando, Chester and other places in said County, at a cost of Forty Thousand ($40,000.00) Dollars, or so much thereof as may be necessary"; and (3) the "construction and erection of the Chester County Cattle Barn and

Show Ring at a cost of Twenty Thousand ($20,000.00) Dollars, or so much thereof as may be necessary."

The principal question to be determined is whether the purposes above mentioned are among those enumerated in Article 10, Section 6 of the Constitution, the pertinent portion of which is as follows: "The General Assembly shall not have power to authorize any county or township to levy a tax or issue bonds for any purpose except for educational purposes, to build and repair public roads, buildings and bridges, to maintain and support prisoners, pay jurors, County officers, and for litigation, quarantine and court expenses and for ordinary County purposes, to support paupers, and pay past indebtedness".

For a proper understanding of the questions involved, we shall first review certain related acts of the General Assembly. Under the terms of an act approved on May 7, 1945, 44 St. at L. 772, the "Chester County War Memorial Commission" was created for the purpose of aiding any municipality or community in Chester County in constructing and equipping "an auditorium and/or recreation and community center, as living memorials to the sons and daughters of Chester County who served in the Armed Forces of our country during the present and all past wars." The Act also authorized the formation by any municipality or community of a local Memorial Commission to advise and cooperate with the Chester County War Memorial Commission "in regard to the approval, plans, construction, nature and equipment of an auditorium, recreation center or playground of any memorial located in its respective municipality or community." The funds to defray the cost of such a memorial were to be raised by public donations and funds of the participating municipality, which were to be supplemented, within certain limitations, by the Chester County War Memorial Commission from the general funds of Chester County. It was further provided "that should a municipality or community of Chester County in erecting, constructing, building and equip-

ping such memorial, desire to house within same a Public Library, it may do so. Such memorial may also be used for the office of the Chester County Service Officer and/or any other public office, for the meeting place of the public and public organizations and for recreational purposes and for such other purposes as may from time to time be advisable. The Chester County War Memorial Commission is hereby authorized and empowered to carry out the purposes of this Act and in so doing they may exercise in the name of Chester County all powers granted to Chester County relative to the construction of public projects as reasonably necessary."

In 1946, the above act was amended in certain particulars not material to this discussion. 44 St. at L. 1967. By Act No. 952 of the Acts of 1948, 45 St. at L. 2507, the powers of the Chester County War Memorial Commission were further enlarged by "including the power to use the front portion of the lot adjacent to the Courthouse and now owned by the County of Chester for the location of a War Memorial Building. The first floor of which shall be used to house the Chester County Library. Said Commission shall also arrange that the second floor of said Memorial Building be used by the American Legion for any purpose that they deem wise and proper. Provided, that any other floor or floors shall be used by any other such organizations as the Commission shall deem wise to include."

Before discussing the main issues, we shall dispose of a preliminary question of statutory construction which is stated in the briefs as follows: "Was it the legislative intent that the 'War Memorial' referred to in Section 5 of Act No. 951 of 1948 be the 'War Memorial Building' mentioned in Section 2 of Act No. 952 of 1948?" From a careful consideration of both acts, along with the other acts heretofore mentioned, we think it is clear that this question must be answered in the affirmative.

The power of the General Assembly to authorize a county or township to levy taxes or issue bonds is restricted by Section 6, Article 10, of the Constitution to certain purposes therein enumerated. We shall first inquire whether under this section bonds may be issued for the purpose of erecting a War Memorial Building. It is generally recognized that the construction of memorial buildings, monuments, and other public ornaments designed merely to inspire sentiments of partiotism may properly be deemed public purposes for which taxes may be imposed. 51 Am. Jur., Taxation, Section 346; Annotation 30 A. L. R., page 1035. In *Allied Architects' Association v. Payne,* 192 Cal. 431, 221 P. 209, 210, 30 A. L. R. 1029, the Court said "The continuity of our governmental institutions is dependent in a large measure upon the perpetuation of a patriotic impulse which is but the willingness to sacrifice all for the ideas and the ideals which form the foundation stones of our republic. It will not be gainsaid that patriotism is promoted by the erection of a memorial monument, be it granite shaft or building symbolic of the soldier's spirit of sacrifice conceived and consummated in recognition of his deeds of heroic daring, and perpetuating in grateful remembrance those who dedicated their lives to the service of their country. Such a monument brings visibly and effectually before the minds of the present and future generations the sacrifices of the past. It is conceded, as indeed it must be, that the erection of a building as a memorial hall, to the extent that it would serve as a stimulus to patriotism, would be for a public purpose."

But the fact that the erection of this War Memorial would subserve a public purpose does not solve the question now presented for determination. As we endeavored to point out in *Parrott v. Gourdin et al.,* 205 S. C. 364, 32 S. E. (2d) 14, a proposed expenditure may be for a public purpose or a corporate purpose and yet not be among the purposes enumerated in Article 10, Section 6, for which the General Assembly is empowered to authorize a county

to levy a tax or issue bonds. We are impelled to hold that the erection of structures for promotion of patriotism, although the most elemental of public purposes, since in patriotism rests the preservation of the republic, is not for a purpose embraced in this section of the Constitution. It is significant that although the framers of the Constitution were fully aware of the custom in South Carolina of erecting statutes, monuments and memorials to the soldiers and sailors of various wars and in commemoration of great public events, no exception for this purpose was made in the Constitutional limitation above mentioned.

It follows that the issuance of bonds for the erection of this War Memorial cannot be sustained unless it further appears that it will subserve one of the purposes named in Article 10, Section 6. The suggestion is made that this memorial may be properly classified as a "public * * * building". It was held in *Battle et al. v. Willcox et al.,* 128 S. C. 500, 122 S. E. 516, folowed in *Smith v. Robertson et al.,* 210 S. C. 99, 41 S. E. (2d) 631, that a public hospital erected by a township or county was a public building within the contemplation of Article 10, Section 6; in *Cothran v. Mallory et al.,* 211 S. C. 387, 45 S. E. (2d) 599, that a public auditorium owned jointly by a city and county fell within this classification; and in *Parrott v. Gourdin et al., supra,* that reception and ticket rooms and hangars used in connection with an airport do not constitute public buildings within the purview of this section of the Constitution.

Can the memorial in question be properly classified as a public building as that term is used in Article 10, Section 6? It is to be erected on a lot owned by Chester County adjacent to the court house. The first floor is to be used to house the Chester County Library. The Chester County War Memorial Commission is directed to "also arrange that the second floor of said Memorial Building be used by the American Legion for any purpose that they deem wise and proper. Provided, that any other floor or floors shall be used by any

other such organizations as the Commission shall deem wise to include." It is stated in one of the briefs, and not disputed, that the local post of the American Legion at Chester has raised approximately $50,000.00 "as a contribution to said War Memorial Building and in turn for which the American Legion is to use the second floor", and that this contribution "is in proportion to the cost of that portion of the building which it intends to use."

It must be conceded that a county may lawfully issue bonds to erect a public library. It is equally clear, we think, that taxes may not be levied or bonds issued for the erection of a building to be used solely as the place of assemblage for the American Legion. We do not discount the high ideals and principles fostered by this organization or the worthy objectives sought to be attained, but the fact remains that it is not a public body which may be supported or aided by the levy of county taxes. In *Ashmore et al. v. Greater Greenville Sewer District et al.*, 211 S. C. 77, 44 S. E. (2d) 88, 173 A. L. R. 397, the Court pointed out that posts of the American Legion, Civic Clubs and Chambers of Commerce, were purely private organizations, performing no governmental function. It was held in *Kingman v. City of Brockton*, 153 Mass. 255, 26 N. E. 998, 999, 11 L. R. A. 123, that while the erection of a hall to be used and maintained as a memorial to the soldiers and sailors of the War Between the States, there called the War of the Rebellion, may properly be deemed to be a public purpose for which taxes could be lawfully levied, the maintenance and support of a G. A. R. post was not for a public purpose and money could not be raised by taxation to pay for the erection of a building, a portion of which was to be devoted to the use of such a post as long as it existed as an organization. The Court there stated that such an organization "is not a public body, but it is an association of individuals." It was held in *Darby v. Otterman et al.*, 122 Kan. 603, 252 P. 903, 904, that the trustees of a memorial building erected by a city could not lawfully let any part of said building to the

Veterans of Foreign Wars at a nominal rent of $1.00 per year. The Court observed: "The uses to which Veterans of Foreign Wars will put that portion of the building leased to that organization will be for the benefit of a private corporation, although organized for public and patriotic purposes."

We cannot escape the conclusion that the building proposed to be erected, a substantial portion of which will be devoted to the use of a private organization, cannot be deemed a public building within the contemplation of Article 10, Section 6. It is suggested that the contribution to be made by the local post of the American Legion will be comparable to the value of the second floor: Assuming this to be true, the building is to be constructed on a lot owned by the county, presumably will be kept in repair, and light, heat and janitor service furnished by the county, and will be exempt from taxation. If the arrangement contemplates that the American Legion, by reason of its contribution, shall have a vested interest in the building in the nature of the ownership of the second floor, or the exclusive right to its use, we would then have a joint venture between a governmental entity and a private organization. In this connection, see *Smith v. Robertson, supra.*

The cases of *Haesloop v. City Council of Charleston,* 123 S. C. 272, 115 S. E. 596, and *Chapman v. Greenville Chamber of Commerce,* 127 S. C. 173, 120 S. E. 584, strongly relied on to sustain the issuance of the bonds for the purpose of erecting this memorial, did not involve the power of taxation.

It is argued that even if the provision of the Act relating to the use of the second floor by the American Legion is unconstitutional, this could be eliminated and the remainder of the Act sustained. But it clearly appears that this part of the Act is so mutually connected with and dependent upon the other provisions that it cannot be severed without destroying the obvious legislative intent that the undertaking should be considered as a whole.

No attack is made upon the validity of the bonds to be issued for the construction of health centers in Chester County.

The remaining question is whether bonds may be lawfully issued "for the construction and erection of the Chester County Cattle Barn and Show Ring." This feature of the Act has given us considerable concern. The fact that there is no legislative finding or declaration of the use intended to be subserved by this undertaking has added to our difficulty. Nor does the main body of the Act purport to state in what manner the cattle barn and show ring will be operated. The County Board of Directors assert in their return that approximately thirty-one commercial dairies are located in Chester County, which also has a large milk processing plant; that the milk and cattle industry form an important part in the economic life of the County; that "Chester County milk cattle are recognized and renowned throughout the south and Chester County itself is frequently spoken of as the 'Guernsey Center of the South' "; and that "the exhibition of milk cattle is highly informative and educational to those interested in that occupation and furnishes an incentive to the breeding of better cattle."

We think it may be reasonably inferred that the proposed undertaking is of an educational nature designed to disseminate among farmers, for practical purposes, scientific knowledge for the improvement of the cattle and milk business. Courses of study in agriculture are being taught in many of the public schools and colleges of this State and such courses are recognized as an important part of the curriculum. In *Briggs v. City of Raleigh et al.*, 195 N. C. 223, 141 S. E. 597, 599, the Court, in sustaining the expenditure of public funds by the City of Raleigh for a state fair, said: "The purpose and design of a state fair is to promote the general welfare of the people, advance their education in matters pertaining to agriculture and industry, increase their appreciation for the arts and the sciences, and bring them in closer touch with many things which otherwise might remain in

reserve or 'caviare to the general,' to borrow an expressive phrase from Shakespeare's Hamlet." The purpose here is a somewhat similar one. Also, see *State ex rel. Leaverton et al. v. Kerns*, 104 Ohio St. 550, 136 N. E. 217. It was held in *Wright, Comptroller General, v. Atlantic Coast Line R. Co.*, 40 Ga. App. 785, 151 S. E. 553, that a tax levy for the maintenance of a county demonstration agent was for an educational purpose.

We confess that we have reached the conclusion that the construction of this cattle barn and show ring will subserve an educational purpose within the contemplation of Article 10, Section 6 of the Constitution, with some degree of hesitation, but we are not prepared to say that the unconstitutionality of this feature of the Act manifestly appears beyond a reasonable doubt. It will be presumed that the General Assembly had in mind a constitutional purpose rather than an unconstitutional one. *Smith v. Robertson, supra.*

The fact that the provision with reference to the construction and erection of a War Memorial is invalid does not have the effect of invalidating the other parts of the Act. The statute attempts to accomplish three distinct objects. When the unconstitutional portion is eliminated, that which remains is capable of being executed in accordance with the legislative intent, wholly independent of that which has been rejected.

The result of the foregoing conclusions is that the relief sought by the petition is granted in part and refused in part.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.