14939

CONNER v. CHARLESTON HIGH SCHOOL DISTRICT *ET AL.*

(4 S. E. (2d), 431)

August, 1939.

*Mr. Huger Sinkler,* for petitioner,

*Mr. H. L. Erckmann,* for respondent,

September 5, 1939.

*Per curiam.*

This is a taxpayer's suit, brought by permission, in the original jurisdiction of the Court, to enjoin Charleston High School District, created by Act of the General Assembly approved June 2, 1939, from issuing and selling bonds pursuant to the terms of the Act.

The facts in this case are:

The Charleston School District, through its regularly elected or appointed trustees, has been the recognized authority for the operation of all public schools, grammar schools and high schools, within the boundaries of the said Charleston School District, which are coterminous with the territory of the City of Charleston, South Carolina.

The constitutional amendment applicable to the bonds of this school district (approved February 24, 1921, XXXII Stats., 90), reads as follows:

*"Provided, further,* That the limitations imposed by this Section shall not apply to the Charleston School District, comprised within the present limits of the City of Charleston, such school district being hereby expressly authorized to vote bonds to an amount not exceeding one million ($1,-000,000.00) dollars, the proceeds of such bonds to be applied solely to the erection and maintenance of school buildings in said district, under such restrictions and limitations as the General Assembly may prescribe, and where the question of incurring such indebtedness is submitted to the qualified electors of said school district, as provided in the Constitution, upon the question of bonded indebtedness."

This school district has issued and has outstanding bonds up to One Million ($1,000,000.00) Dollars, although there is in the sinking fund approximately Four Hundred Thousand ($400,000.00) Dollars.

Substantial sums have been heretofore expended for high schools within the district, to the prevention of making apparently necessary expenditures for the grammar schools; and the trustees of the district made an investigation of the conditions of the schools and found as a fact that the present facilities are inadequate, deplorable and should be remedied.

The General Assembly by an Act approved June 2, 1939, created the Charleston High School District, having an area coterminous with that of the City of Charleston and with that of the Charleston School District, and authorized said Charleston High School District, by and through its trustees, to issue and sell bonds up to eight per cent. of the assessed value of the taxable property in said district; that out of the proceeds arising from the sale of said bonds there be paid Four Hundred Thousand ($400,000.00) Dollars to the Charleston School District for certain high school buildings now owned and operated by Charleston School District, and the balance to be used as provided in said Act. It devolves the duty of trustees of the Charleston High School District upon the trustees of Charleston School District, and makes the holding of office as a trustee of Charleston School District as a prerequisite to the holding of office as a trustee of Charleston High School District. The operation and maintenance of the present high school system of the Charleston School District are vested in the respondents in their capacities as trustees of Charleston High School District. The Four Hundred Thousand ($400,000.00) Dollars above referred to is to be received by respondents in their capacity as trustees of Charleston School District, and is to be expended for the purpose of building additional grammar schools. There is to be appointed for the Charleston High School District a director of business management, who shall

be the same person appointed to such office for the Charleston School District, and whose term of office shall be the same, and subject to the same rules and regulations. His compensation as director for Charleston School District is also to cover his services for the Charleston High School District. And throughout the Act, the affairs and management of Charleston School District and Charleston High School District are intertwined.

It appears from the admitted facts that the respondents have met and organized in pursuance with the statute creating Charleston High School District, and have adopted resolutions providing for the issuance of Four Hundred Thousand ($400,000.00) Dollars of bonds for the purpose of taking over the physical high school properties from Charleston School District. In addition, they admit that they contemplate the issuance of additional bonds and, if necessary, up to eight per cent. of the assessed valuation of the taxable property within the school district.

The main attack on the Act under discussion is that the right to issue bonds thereunder is prohibited by the constitutional amendment hereinabove set out, which limits the issuance of bonds to One Million ($1,000,000.00) Dollars, and requires the question of incurring such indebtedness to be submitted to the qualified electors of the school district. It appears to be unnecessary that we consider any other question.

Before making disposition of this question, it is well that we state again the settled rule in this State, that before an Act of the Legislature may be declared unconstitutional, its invalidity must be shown beyond reasonable doubt. In fact, it has been stated that to merely doubt the validity of a statute is to resolve the doubt in favor of its validity. But where its unconstitutionality appears beyond reasonable doubt, it is the duty of this Court to so declare, and it is a duty which we may not shirk.

Respondents cite and quote from *Powell v. Hargrove,* 136 S. C., 345, 356, 134 S. E., 380, the following:

"We have not been cited to any language of the Constitution which forbids the General Assembly from directing the issuance of bonds for educational purposes by a school district, or high school district, without submitting the question to a vote of the people. On the other hand, we think that, within the proper limitations, the Legislature distinctly has that power. Unless something in the Constitution forbids the lawmaking body from exercising a power of this kind, authority is vested in that branch of our government. *Carrison v. Kershaw County*, 83 S. C., 88, 64 S. E., 1018; *Arnette v. Ford, supra; Lillard v. Melton*, 103 S. C., 10, 87 S. E., 421.

"*A very close reading of the Act shows that there is no disposition to violate any section of the Constitution as to the limitation of bonded indebtedness by the county, or any political division or subdivision thereof.* (Italics added.) In Section 3, wherein the authority to issue and sell bonds is given, it is distinctly stated that such bonds shall not exceed 8 per centum of the assessed valuation of the taxable property in each of the said high school districts. And a further proviso is made that the Act shall not be deemed or held to intend or purport to authorize the issuance of bonds in excess of any limit imposed by the Constitution of the State. From the language of this section, it cannot be doubted that the Legislature had in mind all the provisions of our Constitution with reference to the issuance of bonds for public purposes, and that the whole purpose was to stay, clearly, within the letter and spirit of the Constitution."

In the case at bar, it can hardly be doubted that the Act of 1939 (the Act under discussion) was passed with the intent and purpose of circumventing the constitutional amendment applicable to Charleston School District.

If the trustees of Charleston School District had not heretofore acted upon the premise that the function of Charleston School District was to supply high schools in addition to grammar schools, and this was of course also the intent in

amending the Constitution so as to increase the permissive bonded indebtedness from Two Hundred and Fifty Thousand ($250,000.00) Dollars to One Million ($1,000,000.00) Dollars, the newly created Charleston High School District, although covering the identical territory, would not necessarily be a duplexity, but under the facts and circumstances of this case we cannot fail to recognize that to sanction the issuance of additional bonds would permit the bonded indebtedness of Charleston School District or the territory therein embraced to be increased over and above the amount limited by the State Constitution, even though voted by the qualified electors. An examination of the statute fails to disclose either any legal justification for the creation of the new high school district or any powers not already exercised by the respondents. The high schools in Charleston School District are still to be operated by the same individuals. In fact, the General Assembly seems to recognize the high school system is in the right hands for the duty of operating this system is left with the respondents. When the Act is dispassionately analyzed, there seems to be but one reason for the creation of the Charleston High School District, and this is to permit the issuance of additional bonds—the issuance of which is prohibited by the Constitution—and without an election on the question by the qualified electors within the territorial limits of Charleston School District.

We are not dealing with the question of the inherent power of a school district to create a high school district either within or coterminous with its own boundaries; nor are we concerned here with the broad question of the extent of the powers of the Legislature in making provision for the creation of such a high school district. The question in this case relates exclusively to the constitutionality of the 1939 Act which undertakes, upon the facts hereinbefore related, to authorize an existing school district under a new name, to issue bonds in excess of the amount specifically named in a constitutional provision affecting the same area,

the same public officials and the same objective. Viewing the facts of this case in the light of the scope and purpose of the 1939 Act, and of the applicable constitutional limitation, we cannot in reason reach the conclusion, which in effect is the basic contention of respondents, that the proposed additional bond issue may be sustained on the constitutional principle that in determining the debt limitation of a given area, the indebtedness of the several political units in that area need not be added in fixing the debt limitation of any of such political units.

The petitioner concedes the patriotism of the respondents in their desire to improve educational facilities to the youth of this school district. Likewise do we freely concede this.

The respondents are hereby permanently enjoined and restrained from issuing or selling bonds pursuant to Act of the General Assembly, approved June 2, 1939, creating Charleston High School District.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.

### ORDER ON PETITION FOR RECONSIDERATION AND CLARIFICATION

*Per curiam.*

The petitioner, without asking for a rehearing, suggests that the Court might wish to reconsider certain phraseology of the opinion filed in this case, "if it wishes the decision to be in harmony with certain former decisions of the Supreme Court, not expressly overruled." This comment has reference to the constitutional principle heretofore declared by this Court that the debt limit of a given governmental unit is not restricted by outstanding indebtedness of a political subdivision of the same unit.

The facts of the present case do not involve that principle. The opinion of the Court clearly points this out. There can-

not, therefore, be any probability that the opinion in this case may be construed as intended to affect the constitutional principle above referred to.

The petition is dismissed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.