18177

M. F. GREY, Appellant, v. Marvin VAIGNEUR, Thomas H. Woods, Wallace E. Goethe, L. J. Thomas, and Rance J. Smith, together constituting the County Board of Commissioners of Jasper County, and Daniel R. McLeod, as Attorney General for the State of South Carolina, Respondents.

(135 S. E. (2d) 229)

*Luke N. Brown, Jr., Esq.,* of Ridgeland, *for Appellant,*

*J. J. McKellar, Esq.,* of Ridgeland, *for Respondents,*

March 9, 1964.

LEWIS, Justice.

This action for declaratory judgment stems from the initiation of a program for the construction of additional public school facilities in Jasper County, South Carolina, and legislation enacted by the General Assembly to provide for the financing of such improvements. For a number of years the school system in Jasper County has been operated under a single district whose area is co-extensive with that of the county. The several former school districts of the county were so consolidated into a single unit by Act No. 842 of the 1952 Acts of the General Assembly and is known as The School District of Jasper County. The school district proposes a school improvement program involving an expenditure of $800,000.00, which is designed to equalize educational opportunities in the district and the county. Because of its constitutional debt limitation, the district can only raise approximately $300,000.00 of the needed funds. In order to provide the additional funds required to carry out the construction program by the district, the General Assembly, by the terms of Act No. 570 of the Acts of 1963, authorized Jasper County to sell bonds of the county in the amount of $500,000.00 and turn the proceeds over to the co-extensive school district.

This action was instituted against the defendants as the County Board of Commissioners of Jasper County, and seeks an adjudication as to whether the defendants may

constitutionally issue bonds pursuant to the foregoing Act and make the proceeds of such bond sale available to The School District of Jasper County to pay part of the costs involved in the proposed program of public school improvement. It is contended that Act No. 570 is unconstitutional in that Sections 5 and 6 of Article 10 of the Constitution of South Carolina restrict the county from selling bonds to assist the co-extensive school district in providing educational facilities. Specifically, it is alleged that Act No. 570 violates the foregoing constitutional provisions in that (1) the sale of the bonds is not for a corporate purpose of the county since the duty to operate the school system is devolved upon the school district and not the county, and (2), since the area of the school district is co-extensive with that of the county, the effect of turning over the proceeds of the bond sale by the county to the school district to enable it to carry out its educational program is to indirectly permit the district to incur debt beyond that permitted by the applicable constitutional debt limitation. The lower court heard the matter upon the pleadings and sustained the constitutionality of the legislation in question. This appeal followed.

Concisely stated, the question to be decided is whether a county is restricted by Sections 5 and 6 of the Constitution of this State from issuing bonds to assist a co-extensive school district in the construction of public school facilities. The facts are not in dispute.

To provide the required $800,000.00 needed by the school district to finance the proposed school improvement program, the General Assembly enacted in 1963 two statutes enabling the district and the county to sell bonds. They appear as Acts Nos. 569 and 570 of the 1963 Acts of the General Assembly.

Under the terms of Act No. 569 the County Board of Education of Jasper County was empowered to provide additional public school facilities for the school district and was authorized to issue bonds of the school district to the

amount permitted by the applicable constitutional debt limitation. As heretofore stated, the school district may issue bonds under this Act to the extent of approximately $300,000.00.

By Act No. 570, here in question, Jasper County was authorized to issue bonds in the amount of $500,000.00 to provide the additional funds needed by the school district to finance the public school improvement program. It was stated in the Act that the General Assembly took note that an expenditure of $800,000.00 was required in order to provide proper school facilities in the school district and that, since the district had to observe an eight per cent (8%) constitutional debt limitation, it was not in a position to raise all of the needed funds. It was further noted that the county and school district were co-terminous and that, since the county was authorized by Section 6 of Article 10 of the Constitution of this State to incur bonded indebtedness for educational purposes, it was proper that the county be authorized to issue bonds in the amount of $500,-000.00 and turn the proceeds over to the school district so as to provide the district with the $800,000.00 required for its program.

A determination of the issues involves an inquiry into the power of the General Assembly to enact the questioned legislation. In such an inquiry, we must keep in mind the basic principle that the provisions of the Constitution of this State are not a grant, but a limitation of legislative authority. Therefore, the powers of the General Assembly are plenary as to all matters of legislation unless limited by some constitutional provision. *Evans v. Beattie,* 137 S. C. 496, 135 S. E. 538.

The school district is the governmental unit upon which is devolved the primary duty of administering the school system in Jasper County. Since the primary duty to operate the school system is that of the school district and not the county, it is argued that the sale of the bonds by the county under Act No. 570 is not for a corporate purpose within

the meaning of Sections 5 and 6 of Article 10 of the Constitution.

Section 5 of Article 10 states that the corporate authorities of counties, townships, school districts, cities and towns may be vested with the "power to assess and collect taxes for corporate purposes."

The provisions of Section 6 of Article 10, pertinent here, state: "The General Assembly shall not have power to authorize any county or township to levy a tax or issue bonds for any purpose except for *educational purposes,* to build and repair public roads, buildings and bridges, to maintain and support prisoners, pay jurors, County officers, and for litigation, quarantine and court expenses and for ordinary County purposes, to support paupers, and pay past indebtedness." (Emphasis added.)

It is now settled by the decisions of this court that Sections 5 and 6 are properly construed together, and that the power of the General Assembly to authorize a county to sell bonds is limited to the purposes set forth in Section 6. *Gentry v. Taylor,* 192 S. C. 145, 5 S. E. (2d) 857; *Parrott v. Gourdin,* 205 S. C. 364, 32 S. E. (2d) 14.

Section 6 of Article 10 specifically sanctions the power of the General Assembly to authorize a county to sell bonds for educational purposes, and the present Act clearly authorizes Jasper County to sell its bonds for such purpose. The effect of the argument here would be to write into Section 6 language which would permit the county to issue bonds for educational purposes, only when the county itself operated the public school system. We find nothing in the Constitution of this State which would require such construction. In reality, the foregoing argument attacks the method adopted by the General Assembly for the expenditure of the funds to be raised by the county, and not the purpose for which they will be expended. The method to be adopted for the expenditure of

funds raised by the county for a purpose sanctioned by Section 6 of Article 10 of the Constitution is one largely of legislative policy. In this case, the sale of the bonds by the county is no less for an educational purpose because the General Assembly has seen fit to authorize the expenditure of the funds through the co-extensive school district which is charged under the law with the duty of carrying out the educational program.

The Constitutional sanction for both the county and the school district to issue bonds for educational purposes is clear. Since they are co-extensive, the result of the school improvement program will be to equalize educational opportunities in the district and the county. Certainly, the county has an interest in promoting and providing for the education of its citizens. Since both governmental units may issue bonds for educational purposes, and both have a common interest in doing so, the legislature has simply provided for the results to be accomplished, in effect, through a joint project. We agree with the defendants that there is no basic distinction in point of law in the contribution of the county here from that sustained in the case of *Allen v. Adams,* 66 S. C. 344, 44 S. E. 938, in which the Town of Edgefield issued bonds to help the school district of the Town of Edgefield build a school building; or in the case of *Smith v. Robertson,* 210 S. C. 99, 41 S. E. (2d) 631 where Charleston County was permitted to issue bonds to buy the site for the present State Medical College Hospital; or in the case of *Cothran v. Mallory,* 211 S. C. 387, 45 S. E. (2d) 599 where Spartanburg County and the City of Spartanburg jointly built a public auditorium; or in *Shelor v. Pace,* 151 S. C. 99, 148 S. E. 726, where Oconee County was permitted to issue bonds for school district purposes. As stated in the *Smith case,* "[W]e have nothing in our Constitution which prohibits cooperation between two governmental entities, created under it, in doing what each of them might do alone."

Finally, it is argued that Act No. 570 permits the school district to indirectly exceed its constitutional debt limitation and, therefore, violates Section 5 of Article 10 of the Constitution.

The debt limitation of both the county and the school district is governed by Section 5 of Article 10 of the Constitution. Until the foregoing section was amended in 1963, both were subject to a debt limit of eight per cent (8%) of the assessed value of the taxable property therein. By Act No. 10 of the 1963 Acts of the General Assembly, a special amendment to Section 5 of Article 10 was ratified, under which the debt limit for Jasper County was raised from eight per cent to twenty per cent. So, the county now has a debt limit of twenty per cent, but the debt limit for the school district is still eight per cent. Since the areas comprising the county and the school district are co-extensive and co-terminous, the result is that the assessed value of the property in each is the same, but they have different constitutional debt limitations.

The argument that Act No. 570 circumvents the debt limitation of the school district, by authorizing the county to sell bonds and turn the proceeds over to the school district so that the district could have funds available for public school purposes, which it could not raise because of its own debt limitation, is without merit. While the county and the school district are co-extensive in area, they are separate and distinct corporate entities and are separately subject to the constitutional debt limitation applicable to each. *Tindall v. Byars*, 217 S. C. 1, 59 S. E. (2d) 337. The bonded indebtedness of the school district, by virtue of the sale of bonds by it, will not exceed its debts limitation. The bonds to be sold under Act No. 570 will constitute the indebtedness of the county, a separate and distinct corporate entity, and will, therefore, not operate to increase the indebtedness of the school district, within the intent and meaning of Section 5 of Article 10 of the Constitution, as amended.

The exceptions are overruled and the judgment of the lower court affirmed.

TAYLOR, C. J., and MOSS, BUSSEY and BRAILSFORD, JJ., concur.