### 19225

Paul Raymond GOULD and Everett Clarence Gourlay, Individually and representing the taxpayers and property owners of the Recreation District in Richland County, and Irmo-Chapin Recreation District in Lexington County, Respondents-Appellants, v. Donald F. BARTON et al., Appellants-Respondents, and Frank W. Schmitt, individually and representing the taxpayers and property owners of the City of Columbia, South Carolina, Respondent-Appellant.

(181 S. E. (2d) 662)

*Messrs. James A. Hutto, Jr.,* of Columbia, and *Theodore B. Guerard, Sinkler, Gibbs, Simons & Guerard,* of Charles-

ton, *for the Appellants-Respondents, Riverbanks Parks Commission* and *Richland-Lexington Riverbanks Parks District,* and *Daniel R. McLeod, Atty. Gen., Joel E. Gottlieb, Asst. Atty. Gen.,* of Columbia, *for Appellant-Respondent, Daniel R. McLeod as Attorney General for the State of South Carolina,*

*George H. Davis, Jr., Esq.*, of Columbia, *for all Respond-ents-Appellants,*

*Messrs. James A. Hutto, Jr.,* of Columbia, and *Theodore
B. Guerard, Sinkler, Gibbs, Simons & Guerard,* of Charles-
ton, *for the Appellants-Respondents, Riverbanks Parks Com-
mission and Richland-Lexington Riverbanks Parks District,
and Daniel R. McLeod, Atty. Gen., Joel E. Gottlieb, Asst.
Attorney General for the State of South Carolina, in reply,*

May 27, 1971.

LEWIS. Justice.

The issues in this appeal involve the constitutionality of legislation adopted by the General Assembly at its 1969 and 1970 sessions, by which the territory embraced within the counties of Richland and Lexington has been constituted a special purpose district and a political subdivision of the State for the purpose of issuing bonds to establish "public recreation and zoo facilities" on an area of land located partially in Richland County and partially in Lexington County. The constitutionality of the legislation is attacked upon several grounds, some of which were sustained and others overruled by the lower court. Both the plaintiffs and the defendants have appealed, presenting for review all of the rulings of the lower court. While perhaps unnecessary, we consider all questions presented because of the public interest involved.

The statutes involved include Acts Nos. 323 and 365 of the 1969 Acts of the General Assembly, 56 Stat. 391 and 639; and Act No. 1207 of the 1970 Acts of the General Assembly, 56 Stat. 2599.

The present legislation resulted from efforts by the Greater Columbia Zoological Society, Inc., interested individuals, civic groups, and the City of Columbia to establish a zoological park in the Columbia area. In furtherance of the above aim, the Greater Columbia Zoological Society, Inc., acquired a deed from the South Carolina Electric and Gas Company for a tract of land containing 16.31 acres, with title to revert to the company if the society ever ceased to use the premises "for zoological purposes." Similar efforts by the City of Columbia to establish a zoo resulted in the acquisition by it of a twenty-five year lease from the South Carolina Electric and Gas Company for two tracts of land, one in Richland County of 55 acres and the other in Lexington County of 53 acres. The above three tracts of land were in the same vicinity and located where the Broad and Saluda Rivers come together.

The efforts of the various interested groups were apparently coordinated with the adoption by the General Assembly of Acts Nos. 323 and 365, *supra.* Under these statutes the Riverbanks Parks Commission was formed consisting of seven members, for the purpose of establishing and operating "public recreation and zoo facilities" within a described area contiguous to the Saluda and Congaree Rivers.

After the Riverbanks Parks Commission was formed, the interest of the Greater Columbia Zoological Society, Inc., and the City of Columbia in and to the above three tracts of land were transferred to the commission. Subsequent to the decision of the lower court, a new lease has been acquired by the commission covering the 55 and 53 acre tracts and this lease has been, by agreement, made a part of the record. The new lease is for a period of 99 years and is granted upon the condition that the lease shall terminate if the premises are "ever put to any purpose other than a zoological park" together with "related supportive facilities and amusement equipment."

Subsequent to the acquisition by the commission of rights to the foregoing lands, Act No. 1207, *supra,* was adopted in order to provide funds to enable the commission to perform the functions imposed upon it under the statutes previously adopted (Acts Nos. 323 and 365, *supra*). Act No. 1207 will be referred to hereafter as the bond act. Under its terms, a special purpose district is created, named the Richland-Lexington Riverbanks Parks District, which is coterminous in area with the territory of Richland and Lexington Counties. The stated special purpose for which the district is created is the same as that previously set forth in the statutes establishing the Riverbanks Parks Commission which is made the governing body of the district. The commission is authorized to issue general obligation bonds in an amount not to exceed $1,500,000.00 to accomplish the purposes for which the district was formed. The full faith, credit and taxing power of the district is pledged to the payment

of the bonds so issued and an annual tax is directed to be levied by the Auditors of Richland and Lexington Counties in an amount sufficient to pay the principal and interest on the bonds as they mature.

This action was subsequently instituted to determine the constitutionality of the above mentioned statutes. We find it more convenient to follow the statement of each question presented with our conclusion thereon.

Section 3 of Act No. 323 attempts to delineate the territorial area in which the Riverbanks Parks Commission would operate by authorizing the establishment of public recreation and zoo facilities "within the territory in the counties of Richland and Lexington contiguous to the Saluda River and the Congaree River from Highway I-26 on the north to the Granby Locks on the south."

The position is taken that the area described has no eastern and western boundaries and the description is therefore so vague and uncertain as to render it impossible to determine the territorial area over which the commission has jurisdiction. It is for this reason contended that the foregoing portion of Act No. 323 is unconstitutional and the bond act cannot be implemented.

Reasonable certainty in the enactment of statutes is required, and a statute which is so vague or indefinite that it cannot be executed will be declared void. However, as stated in *Wingfield v. S. C. Tax Commission,* 147 S. C. 116, 144 S. E. 846, quoting from 25 R. C. L. 810: "The fact, alone that an Act is open to the criticism that it is vague, uncertain, and indefinite in some of its provisions does not render it void, so long as it does not infringe some constitutional provision and is capable of execution in its more essential provisions." If the legislative intent can be determined with reasonable certainty, the statute will not be declared inoperative.

The delineation in Act No. 323 of a territorial area did not attempt to define the area over which the commission

would necessarily have jurisdiction, but was for the purpose of locating the facilities to be established. The legislative intent was to require that the authorized recreation and zoo facilities be located *within* the area described.

There is nothing to indicate that the description is so vague and indefinite as to make it impossible to determine the location of the facilities in accord with the legislative intent. The project, according to the statute, is to be located on land contiguous to (adjoining) the Saluda River and the Congaree River and between Highway I-26 on the north to the Granby Locks on the south. If the project is located between, Highway I-26 and the Granby Locks and on land contiguous to the Saluda and Congaree Rivers, it will be located within the area prescribed by statute.

Assuming however, that the statutory description of the location is vague, such has been removed by the recitals in the bond act. Section 1 of the bond act, after reciting the above description contained in Act No. 323 states:

"The General Assembly further finds that the commission has acquired a tract of land consisting of one hundred sixteen acres on the Saluda River, but is without funds with which to proceed with the development of the facilities contemplated by Act No. 323 of 1969."

Therefore, when the General Assembly adopted the bond act, it was familiar with the site upon which the zoological park is to be constructed and the bond act was obviously enacted for the purpose of authorizing the issuance of general obligation bonds to construct the project on the site which had been previously acquired. This constituted legislative approval of the location of the project, removing any previous ambiguity thereabout. The fact that the bond act refers to the acreage in the tract acquired by the commission as containing 116 acres when it actually contains approximately 124 acres is of no consequence. The record is clear that the property now owned by the commission is the same as that referred to in the bond act.

The challenge of the statute because of vagueness in the description of the territorial area within which the project is to be located is without merit.

In view of the negotiation by the commission, since the decision of the lower court, of a lease for the 53 and 54 acre tracts of land for a period of 99 years, the next question to be determined is whether the construction of the proposed zoological park upon property leased for a term of 99 years from a private corporation would violate the provision of Article X, Section 6, of the South Carolina Constitution.

Article X, Section 6 provides:

"The credit of the State shall not be pledged or loaned for the benfit of any individual, company, association or corporation; * * *."

The prohibitions of Article X, Section 6, extend to political subdivisions of the State and would be applicable to the district created by the present legislation. *Eliott v. McNair,* 250 S. C. 75, 156 S. E. (2d) 421.

Under Section 3 of Act No. 323, *supra,* the commission is granted the authority to acquire property "by gift, deed, easement, lease or otherwise." The power of eminent domain is not granted. Pursuant to the authority granted, the commission has leased approximately 108 acres of land for a term of 99 years, ending on March 4, 2068, upon which most of the proposed zoological park will be constructed. The lease provides for the payment of a yearly rental of $1.00 and defines the respective rights of the parties with reference to the use of the property. After the lease period, it continues as a tenancy from year to year and until terminated by six (6) months notice by either party. The only specific provision with respect to disposition of existing improvements upon termination of the lease is that the "lessee agrees, if so required by the lessor, to remove all structures from the premises and to restore the premises to reasonably good condition." The use of the property by the commission is made subservient to "an easement and the right over the entire

premises to construct, operate, maintain, redesign, and rebuild such electric power and gas lines, substations (including communication wires and cables), and other control stations, and all such appurtenances and appliances as from time to time may be deemed convenient in the sole judgment of the lessor."

The present contention is, basically, that the public improvements to be placed upon the leased premises may possibly become the property of the lessor upon the termination of the lease, prior to the expiration of the useful life of such improvements, and therefore public funds derived from the pledge of the credit of the district will have been spent for the benefit of the lessor, a corporation, in violation of the prohibitions of Article X, Section 6.

The establishment of the zoological park on leased property is within the discretionary powers granted to the commission under the statutes, and there is nothing to indicate that its decision to do so will violate Article X, Section 6. The record is devoid of any showing that any improvement to be placed on the property will ever constitute a benefit to the lessor, within the meaning of this constitutional provision.

The lessor has no conceivable financial interest in the establishment of the zoological park. The funds are to be expended solely and exclusively for a public purpose, and the lessor has simply leased the lands to the commission, practically rent free, for a period of 99 years, as a site for the construction and maintance of the public facility.

The lease arrangement, whereby the commission obtains the use of the property, rent free, for a period of 99 years, instead of investing the amount of the purchase price for land upon which to establish the park, will, over such a long period, amount to a substantial financial advantage to the district, and affords a sound basis upon which to conclude that the district will receive adequate consideration in the transaction. In view of the nature of the zoological park and

the type of facilities necessary to establish it, it is clearly inferable that much of the improvements would be removable at the end of the lease period, assuming that the lease was not renewed. Under these circumstances the decision of the commission to construct the zoological park on leased property does not constitute an abuse of the discretion vested in it by the statutes. *Sadler v. Lyle,* 254 S. C. 535, 176 S. E. (2d) 290.

The next questions concern the power of the General Assembly to create the special purpose district, which is coterminous in area with the territory of two counties, for the purpose of financing the establishment of the facilities set forth in the statutes.

The present legislation creates the Riverbanks Parks Commission and the Richland-Lexington Riverbanks Parks District for the purpose of establishing and operating "public recreation and zoo facilities." While the statutes refer to the establishment of recreation and zoo facilities, the basic legislative intent was to provide the means for the establishment of a zoological park or, as stated in the statutes, "zoo, facilities;" and it was not intended to grant authority to the commission to establish recreational facilities except as they may directly relate to and support the function of the zoological park. We therefore construe the statutes as providing for the establishment of a zoological park with related and supportive recreational facilities.

So construing the legislative purpose, the question is then presented as to whether there is any constitutional prohibition against the creation of the present special purpose district to finance the construction of a zoological park.

We think that a zoological park subserves a public purpose. It is primarily educational and instructive, but also has a recreational aspect. Both aspects serve the public interest and welfare. The public purpose served by such parks is succinctly and adequately stated in the case of *State ex rel. Zoological Board of Control v. City of St. Louis,* 318 Mo. 910, 1 S. W. (2d) 1021:

"Their recreational and educational features, which are concomitants of all parks of this character, may be enjoyed by the general public, regardless of its citizenship. The instructive character of zoological parks, not only to school children, but everyone interested in natural history, is too well known to admit of discussion. Such parks, therefore, may be said to be established and maintained for the public interest and welfare."

Since it subserves a public purpose, the Legislature has the power to create a special purpose district consisiting of two counties and authorize it to issue bonds to construct and operate a zoological park.

In *Berry v. Milliken,* 234 S. C. 518, 109 S. E. (2d) 354, the validity of legislation creating the Greenville-Spartanburg Airport District, embracing the entire area of the counties of Greenville and Spartanburg, was upheld as a proper exercise of the plenary power of the Legislature to create special purpose districts. Also, in *Bagnall v. Clarendon & Orangeburg Bridge District,* 131 S. C. 109, 126 S. E. 644, the right of the Legislature to create a district embracing two counties to build a connecting bridge was sustained. In the *Berry* case, we stated:

"It is well settled under a long line of decisions originating in the Court's holding in 1915 in the case of *Lillard v. Melton,* 103 S. C. 10, 87 S. E. 421, 428, and including the relatively recent decision of *Ashmore v. Greater Greenville Sewer District,* 211 S. C. 77, 44 S. E. (2d) 88, 173 A. L. R. 397, that the Legislature is empowered to carve out a district from a territory of the State for the accomplishment of some public purpose."

There is no contention in this case that the creation of the present district, coterminous with Richland and Lexington Counties, is arbitrary or constitutes an abuse of discretion on the part of the General Assembly.

It is contended however that the construction and operation of a zoological park is not a proper county function under Article X, Section 6, of the South Carolina Constitution; and that the establishment of a two-county district to construct such a park is an attempt to do by indirection that which cannot be done directly by one county. This contention is based upon the holding in *Leonard v. Talbert,* 225 S. C. 559, 83 S. E. (2d) 201, that a county cannot issue bonds for recreational purposes, and the decision in *Conner v. Charleston High School District,* 191 S. C. 412, 4 S. E. (2d) 431, to the effect that a subterfuge to circumvent constitutional prohibitions will not be sustained.

The foregoing argument is based upon the incorrect premise that a zoological park is primarily a recreational facility. Under Article X, Section 6, a county may levy a tax and issue bonds for educational purposes. *Powell v. Thomas,* 214 S. C. 376, 52 S. E. (2d) 782. We have previously determined in this decision that a zoological park is educational in nature, and thus would fall within a constitutionally permitted function for which a county could issue bonds.

In the *Powell* case, the right of a county to issue bonds to construct a cattle barn and show ring was upheld because the undertaking was educational in nature. In disposing of the issue, the Court stated:

"We think it may be reasonably inferred that the proposed undertaking is of an educational nature designed to disseminate among farmers, for practical purposes, scientific knowledge for the improvement of the cattle and milk business. Courses of study in agriculture are being taught in many of the public schools and colleges of this State and such courses are recognized as an important part of the curriculum."

The record in this case establishes the predominantly educational nature of the zoological park and the instructional value it will afford to students and the public in general. The gaining of knowledge and an appreciation of natural life through observation and study of a zoo is no less edu-

cational because it is at the same time entertaining and recreational. The contention that the creation of the district was for a purpose prohibited by the Constitution is without merit.

It follows that the creation of the district coterminous with Richland and Lexington Counties for the purpose of constructing a zoological park constituted a valid exercise by the General Assembly of its plenary power to create special purpose districts.

The validity of the present litigation is attacked upon the futher ground that it creates overlapping districts to finance similar facilities in violation of the settled principle, stated in *Wagener v. Smith*, 221 S. C. 438, 71 S. E. (2d) 1, that "there cannot be at the same time, within the same territory, two distinct municipal corporations excercising the same powers, jurisdiction, and privileges."

In 1960, the General Assembly created the Richland County Rural Recreation District consisting of all of Richland County except the area within the corporate limits of the City of Columbia. Section 51-395 *et seq.,* 1962 Code of Laws. The governing body of the district was granted the power, upon a favorable referendum, to issue general obligation bonds "to establish physical education and recreation facilities, including tennis courts, baseball diamonds, football fields, basketball courts, swimming pools, other facilities of like nature and general recreational facilities."

There was also created in Lexington County in 1969 two recreation districts, one consisting of School District No. 5 and the other consisting of the balance of the area of Lexington County, Act No. 329, 56 Stat. 398. Both districts were granted the authority to issue general obligation bonds to provide the same type recreational facilities as those specified in the above legislation creating the recreation district in Richland County.

As a result of the foregoing legislation, the entire territory of Richland and Lexington Counties, except the City of Columbia, was included in one of the three recreation districts at the time the presently involved Richland-Lexington Riverbanks Parks District was created in 1970 covering the entire area of the two counties.

The validity of the Act establishing the Richland-Lexington Riverbanks Parks District is attacked upon the grounds that it is beyond the power of the General Assembly to create such a district (1) which overlaps a previously established special purpose district and (2) which is established for a purpose similar or related to that for which the previously established underlying districts were created.

We find no constitutional barrier to the creation by the General Assembly of overlapping special purpose districts, *Ashmore v. Greater Greenville Sewer District,* 211 S. C. 77, 44 S. E. (2d) 88, where there is a reasonable basis upon which to distinguish between the nature and type of the services and facilities to be provided by the respective districts.

The special nature of a zoological park as distinguished from general recreational facilities has been previously discussed. We think it clear that the Richland-Lexington Riverbanks Parks District is not intended to finance facilities which duplicate those already provided by the three recreation districts included within Richland and Lexington Counties. The recreation districts were established to provide "tennis courts, baseball diamonds, football fields, basketball courts, swimming pools, other facilities of like nature and general recreation facilities"; while the Richland-Lexington Riverbanks Parks District was created primarily to finance a zoological park within a limited and specified area, with the recreational facilities to be included therein merely incidental to the operation of the park.

The proposed zoological park will include botanical gardens and eventually an aquarium. Obviously, the construc-

tion and maintenance of such a park requires considerable expertise and, because of the specialized nature of the project, the General Assembly no doubt concluded, and properly so, that it did not fall within the scope of the facilities provided or proposed by the recreation districts.

The jurisidiction of the Riverbanks Parks Commission is confined to the specified area where the park will be constructed. The facilities to be constructed by it do not duplicate those proposed in the recreation districts. Therefore, the recreation districts and the Richland-Lexington Riverbanks Parks District will each operate within their respective territory in performing their distinct functions.

The contention that the General Assembly was without power to create the present special purpose district because it overlaps recreation districts previously established is without merit.

The question is also raised as to whether the 15% overlapping debt limitation prescribed by Article X, Section 5, of the South Carolina Constitution applies to the Richland-Lexington Riverbanks Parks District.

This constitutional provision limits the bonded debt of any county, township, school district, municipal corporation or political division to an amount not to exceed eight(8%) percent of the assessed value of all the taxable property therein. This provision contains a futher debt limitation as follows:

"And wherever there shall be several political divisions or municipal corporations covering or extending over the territory, or portions thereof, possessing a power to levy a tax or contract a debt, then each of such political divisions or municipal corporations shall so exercise its power to increase its debt under the foregoing eight percent limitation that the aggregate debt over and upon any territory of this State shall never exceed fifteen per centum of the value of all taxable property in such territory as valued for taxation by the State."

The parties properly agree that the foregoing eight (8%) percent debt limitation applies to the present district. They disagree as to whether it is subject to the overall fifteen (15%) percent debt limitation. This disagreement arises over the application given to the overlapping debt limitation in certain of our prior decisions. We held it applicable to the district in question in *Ashmore v. Greater Greenville Sewer District, supra,* 211 S. C. 77, 44 S. E. (2d) 88; but inapplicable to the districts involved in *Bagnall v. Clarendon & Orangeburg Bridge District, supra,* 131 S. C. 109, 126 S. E. 644, and *Berry v. Milliken, supra,* 234 S. C. 518, 109 S. E. (2d) 354. An analysis of our holding in these cases is necessary.

*Ashmore* involved a special district carved from territory within the County of Greenville for the purpose of financing the construction of an auditorium. The court in that case recognized that there were prior decisions wherein the fifteen percent limitation appeared not to have been applied to the issuance of bonds by the subdivisions there involved, but held that the application of such debt limitation to the auditorium district seemed "too plain to require elaboration." Among the prior decisions noted in *Ashmore* was that of *Bagnall v. Clarendon & Orangeburg Bridge District, supra.* Following the citation of the prior decisions, including *Bagnall,* the court then stated:

"The result of the cited decisions, to which we adhere, was that the particular subdivisions validly issued and sold the bonds which were questioned in those actions, but none of the cases constitutes a precedent which is controlling of this case; none involved an auditorium district authorized to issue general obligation bonds payable from property taxes. It is concluded without difficulty that the fifteen per centum constitutional limit is applicable to the bonds which may be issued to the Auditorium District under the statutes applicable to it."

The Ashmore case stands for the proposition that a special purpose auditorium district within a county is subject to the

fifteen (15%) percent overall debt limitation prescribed by Article X, Section 5; and it was distinguished upon that basis in the later case of *Berry v. Milliken, supra.*

The two cases relied upon to sustain the position that the fifteen (15%) percent debt limitation does not apply in this case are *Bagnall* and *Berry*

*Bagnall* involved a bridge district embracing two counties, created for the purpose of financing the construction of a connecting bridge between Clarendon and Orangeburg counties. The district was made a political subdivision of the State and empowered to issue general obligation bonds carrying the full faith and taxing power of the district. The court held that the two-county bridge district could issue bonds to the full eight (8%) percent debt limit without regard to the overall constitutional debt limitation.

*Berry* involved an airport district embracing the counties of Greenville and Spartanburg. The district was created, as stated in the opinion, "for the purpose of providing airport facilities to serve a large area in the Piedmont section of the State, with a population of about 10% of that of the entire State." The issuance of general obligation bonds was authorized to defray the cost of establishing the airport facilities. The court, as in *Bagnall,* held that the district was not bound by the 15% debt limitation. In reaching the decision in *Berry* the court distinguished the holding in Ashmore.

In the only two cases cited, where this court has considered the effect of the 15% debt limitation on the authority of a two-county special purpose district to issue bonds, the purpose of the district was to fulfill some function which could only be properly performed by going beyond the boundaries of a single county. In *Bagnall,* the purpose was to construct a connecting bridge between the counties, obviously an undertaking necessarily involving both. In *Berry,* the district was formed to provide airport facilities to serve a large populous area of the State extending beyond the boundaries of a single county. The function was such as to necessarily

involve more than the local governmental interests of one county.

The fact that the court, in *Berry,* refused to overrule the *Ashmore* case, but distinguished it, was positive notice that the court considered the situations in *Bagnall* and *Berry* exceptions to the 15% debt limitation and not a repeal of the overall limitations prescribed by Article X, Section 5. In fact, the court, in referring to prior decisions holding that the 15% limitation did not apply to the situations there involved, stated: "While we will not disturb these cases, we shall not enlarge upon them."

While the establishment of a zoo would serve a public purpose, we fail to find present any overriding considerations which would justify holding that the two county district established to accomplish it is not subject to the overall 15% debt limitation. Nothing appears which would sustain a finding that such undertaking necessarily involves governmental interests extending beyond the boundaries of both counties.

We therefore conclude that the 15% debt limitation prescribed by Article X, Section 5, applies to the Richland-Lexington Riverbanks Parks District.

The Richland-Lexington Riverbanks Parks District is subject to the 8% constitutional debt limit imposed by Article X, Section 5, of the State Constitution. In computing such debt limit, the question is raised as to whether the 8% debt limit must be reduced by the bonded indebtedness incurred by the City of Columbia and the underlying recreation districts for recreational purposes.

The present district was formed to create a separate and distinct facility from that to be provided by the bonds previously issued for recreational purposes by the City of Columbia and the underlying recreational districts. It is a separate and distinct corporate entity and, as such, is entitled to incur bonded debt to the extent of 8% of the assessed value

of all taxable property within its boundaries, unaffected by the bonds issued for recreational purposes by the City of Columbia and the underlying recreational districts. See: *Bagnall v. Clarendon & Orangeburg Bridge District, supra,* 131 S. C. 109, 126 S. E. 644; *Berry v. Milliken, supra,* 234 S. C. 518, 109 S. E. (2d) 354; *Grey v. Vaigneur,* 243 S. C. 604, 135 S. E. (2d) 229.

Since the Richland-Lexington Riverbanks Parks District is subject to the 15% overall debt limitation, the question is also presented as to whether, in computing the district's 15% debt limitation, it is proper to exclude the bonded indebtedness of underlying subdivisions which are subject to special constitutional amendments increasing their capacity to incur bonded debt.

The Richland-Lexington Riverbanks Parks District includes several political subdivisions with bonded indebtedness which are subject to special constitutional amendments increasing their capacity to incur bonded debt. Since the indebtedness of these political subdivisions is permitted in each instance by a special constitutional amendment relaxing the debt limitation of Article X, Section 5, none of such indebtedness need be included in calculating the 15% overall debt limitation. *Baldwin v. McFadden,* 234 S. C. 563, 109 S. E. (2d) 579.

It is also contended that the inclusion of the City of Columbia within the Richland-Lexington Riverbanks Parks District violates the rights of the city protected by Article VIII, Section 1, of the South Carolina Constitution.

This constitutional provision directs that the General Assembly shall provide by general laws for the organization and classification of municipal corporations. It futher provides that "no such corporation shall have any powers or be subject to any restrictions other than all corporations of the same class." It is argued that the inclusion of the City of Columbia within the district and the imposition of a tax upon the

citizens of the city to pay the district's bonds imposes restrictions which are not imposed on any other city of the same class. This contention is without merit.

The purpose of Article VIII, Section 1, is to bring about uniformity in legislation affecting municipalities in the same classification and does not involve the power of the General Assembly to legislate with reference to subjects affecting the relationship of a municipality or its residents to the balance of the State. This section only affects the power of the General Assembly to legislate with reference to corporate organization, powers, and functions of municipalities within the same classification. The mere fact that a municipality may be included within the boundaries of a special purpose district or other political subdivision, while other municipalities in the same class are not, does not affect or destroy the uniformity which this constitutional provision was designed to accomplish.

Neither does the fact that the City of Columbia is included within the present district and residents of the city are required to pay district taxes operate to restrict the powers or functions of the city within the meaning of Article VIII, Section 1. The taxes are levied against the taxpayer as a resident of the district and not of the city. The district is a separate and distinct corporate entity and the taxes are imposed solely to accomplish the district's particular corporate function. The power or authority conferred upon the city to tax is in no way affected

Since the present legislation does not relate to the City of Columbia, nor restrict, alter, or impair any of its powers or functions, there is no violation of Article VIII, Section 1.

Several questions are also raised as to the validity of the method prescribed for the appointment of members of the Riverbanks Parks Commission.

Under the provisions of Act No. 323 of the Acts of 1969, as amended, *supra,* the Riverbanks Parks Commission is composed of seven members who are ap-

pointed as follows: two by the County Council of Richland County; two by the Lexington County Legislatve Delegation; two by the Mayor and Councilmen of the City of Columbia; and one by the Columbia Zoological Society to serve ex officio.

The power conferred upon the County Council of Richland County to appoint two members of the commission is attacked upon the ground that the function of the commission is not a purpose in which a county is permitted to participate under Article X, Section 6, of the State Constitution. This contention necessarily falls on the basis of our holding herein that the financing of a zoo by a county is not prohibited under the above Section.

The appointive power granted to the Lexington County Legislative Delegation is questioned as violative of Article 1, Section 14, of the South Carolina Constitution which requires a separation of the executive and legislative powers of the government. We find no infringement of this constitutional provision. We find no material difference between the delegation of authority to legislative delegations to elect highway commissioners, approved in State *ex rel. Coleman v. Lewis*, 181 S. C. 10, 186 S. E. 625, as not violative of Article III, Section 1, of the Constitution and the present legislation which authorizes the appointment of two members of the commission by members of a legislative delegation. If, in *Lewis* there was no unlawful delegation of legislative power, there is here no usurpation of excutive power. In both instances, the law made the exercise of the appointive power a legislative function.

It is also argued that the appointment of members of the commission by the Mayor and Councilmen of the City of Columbia is invalid in that the inclusion of the City of Columbia within the district is in violation of Article VIII, Section 6, of the Constitution. Our holding herein that the inclusion of the City within the district did not violate this constitutional provision renders the foregoing position without merit

The contention that the provision for the appointment of a member of the commission by the Columbia Zoological Society constitutes an unlawful delegation of the appointive power in violation of Article III, Section 1, of the State Constitution, is sustained. *Ashmore v. Greater Greenville Sewer District, supra,* 211 S. C. 77, 44 S. E. (2d) 88.

We are not in this case dealing with the power of the General Assembly to permit the zoological society to recommend, but rather with the delegation of the absolute power of appointment by the society of a member of the commission whose duty it is to administer the public funds. We agree with the lower court that the zoological society is closely akin to a civic or service organization such as was involved in *Ashmore,* and that the appointive power conferred upon the society constitutes an unlawful delegation of power in violation of Article III, Section 1, of the South Carolina Constitution.

The unconstitutional delegation of the appointive power to the zoological society renders the district without a legally constituted governing body and unable to function under the present legislation.

The final question concerns the constitutionality of a provision of Act No. 323, *supra,* which subjects the annual budget of the commission to approval by the Lexington County Legislative Delegation. It is contended that the requirement for approval of the annual budget by the Lexington County Delegation constitutes a violation of Article I, Section 14, of the State Constitution, which provides for a separation of the legislative, executive, and judicial powers of government and that no person or persons exercising the funtions of one shall assume or discharge the duties of the other. We agree.

The power to approve the budget of the commission carries with it the power to disapprove until the budget conforms to the legislative wish, and thereby

places in the Legislative Delegation control of the administration of the funds of the commission. Under the principles announced in *Bramlette v. Stringer,* 186 S. C. 134, 195 S. E. 257, such portion of Act No. 323 is unconstitutional and void.

The provision, requiring approval of the budget by the Lexington County Delegation, is, however, severable from the remainder of the Act and does not affect its remaining portions. *Cox v. Bates,* 237 S. C. 198, 116 S. E. (2d) 828.

As results from our view herein, the judgement of the lower court is affirmed in part and reversed in part.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.